### SAM. JOHNSON, A FREEDMAN, v. THE STATE.

There was evidence that the parties fought in the morning, and that the accused got worsted, whereupon he threatened that he would kill his adversary; and three hours later the deceased was shot from a clump of bushes as he was passing along the road and killed; and the accused stated to a witness that evening that he had killed the deceased, and would do it again were he alive, and the jury found him guilty of murder in the first degree. There was sufficient proof of the lying in wait to show express malice, and to constitute murder in the first degree, and the verdict of the jury was not disturbed. (Paschal's Dig., Art. 2267, Note 612.)

APPEAL from Harris. The case was tried before Hon. JAMES LOVE, judge of the criminal court of the county of Harris.

The 1st section of the 4th article of the constitution of the state reads as follows: "The legislature may establish criminal courts in the principal cities within the state, with such criminal jurisdiction, co-extensive with the limits of the county wherein such city may be situated, and under such regulations as may be prescribed by law; and the judge thereof may preside over the courts of one or more cities, as the legislature may direct." (Paschal's Dig., p. 934, Art. 4, sec. 1.)

By an act of 20th October, 1866, entitled "an act to organize and define the powers of a court of criminal jurisdiction for the counties of Galveston and Harris, and to prescribe the duties thereof," criminal courts were organized in these counties, and JAMES LOVE was elected judge thereof.

The criminal code and the code of criminal procedure were made applicable to their practice. The indictment was found and the prisoner tried in this court. It was proved on the trial that the deceased was found on what was called the "Liberty road," about two miles from the court-house in Houston, and about three or four hundred yards from the house of the accused, who lived upon that road. The deceased had been shot with buck-shot. The first witness, who got to the deceased when the body was yet warm, saw, about one hundred and fifty or two hundred yards "this side" (that is, nearest to Houston) of where the deceased was lying, in a clump of bushes ten or fifteen feet in width, a place that looked like where some one had been standing in the clump of bushes, about fifteen paces from the middle of the road. The clump was very dense; and twelve or fifteen feet from the place he found paper wadding which looked like it had been shot from a gun in the direction of the road which runs along by that clump of bushes.

He first saw the body between 12 and 1 o'clock. It was proved by three witnesses that a fight occurred between accused and deceased in the morning between 9 and 10 o'clock, in which the accused had a pocket-knife and the deceased a pistol. The difficulty had occurred about a stolen horse, which deceased was accused by defendant with stealing. The accused struck the first blow. The deceased at first accused the defendant. Both parties gave up their weapons to bystanders and fought with their fists. The accused was thrown by the deceased and badly beaten about the head and face, and after he called out "enough," deceased let him get up. The deceased came on to town with his wood. The defendant started home, and, as he went, said, "I will go home, get my gun, and shoot you." The deceased was killed as he was returning with his wagon unloaded.

Another witness proved that he was a partner of the

deceased in hauling wood; that on the morning of the difficulty they came to town and unloaded their wood, and were returning. Witness was behind the deceased, but in sight. He heard a gun fire, and saw smoke about a hundred and fifty yards in advance of him, to the right of the road. The smoke came from the clump of tress, but he saw no one. The deceased did not fall immediately, but soon thereafter. The horses were frightened, and ran off briskly. The body of the deceased became entangled, and in some way was dragged about thirty paces, nearly tearing his clothes off. The pistol-belt and scabbard of the deceased were round his body, his pistol lying in the road about thirty yards from where he was lying on his side.

Squire Gamble stated that he knew Sam. Johnson. He did not live far from him. On the night of the day the deceased was killed, about 9 o'clock, the accused came to his house and asked him to come out. The request was repeated several times. The accused asked the witness where Dick Taylor was. Witness replied, "He is dead." The accused said "he had killed him, and were it to do over he would do it again." He had a double-barrelled shot-gun with him.

It was proved that the accused was arrested the next day near the railroad; that he first ran and hid, where he was discovered and arrested. There was other evidence of the circumstances and of the finding of the body near a clump of trees, and it was also proved that threats were made immediately after the fight.

Dodson also swore that as the fight ended the accused told the deceased he was going to kill him. Other persons who were present when the fight ended heard nothing of the threats.

This was all the evidence in the case. The judge defined "murder" in the language of the code, and discussed the whole doctrine of malice, express and implied. The jury found the defendant guilty of murder in the first degree,

and the judgment was that the defendant be hanged, from which he appealed. There was a bill of exceptions, but it was not noticed in the opinion.

*Baxter & Adams*, for appellant.—The killing of a human being with a deadly weapon raises a presumption of guilt of murder in the second degree under our statute. (Paschal's Dig., Arts. 2266, 2267.) And the burden of proof rests on the defendant to reduce the offense below that degree, alone; and, *per contra*, on the state to show facts which make the killing murder in the first degree. In other words, the common-law rule has been in this respect changed, and the burdens of proof divided. (Whart. Crim. Law, 4th rev. ed., 710, 944.)

And to the cases of State v. Turner and State v. Gardner, (cited in Whart., 924,) under the Ohio statute there cited, the attention of the court is especially called.

If the above position be correct, then the court below erred in not charging the jury with this view of the law, and distinctly as to the difference between murder in the first and second degrees. This point is expressly decided in Villareal v. The State, 26 Texas, 107, which also sustains the position here taken.

We are safe in saying that the jury wholly disregarded the testimony of the state's principal witness, Joe Dodson, as he was contradicted by his own statement before committing magistrate. The accused was only convicted of murder in the first degree by the jury being under the impression, from the charges of the court, that the killing, being done with a double-barrelled shot-gun, raised a presumption of guilt of the highest grade of offense, and threw the whole burden of proof on the defendant. [The whole argument and defense of accused was for the position here assumed, which was overruled by the court.]

*John W. Harris*, for the state.—Articles 2266, 2267, Pas-

chal's Digest, provide, that every person, with a sound memory and discretion, who shall unlawfully kill any reasonable creature in being within this state, with malice aforethought, either express or implied, shall be deemed guilty of murder; and all murder committed with express malice is murder in the first degree.

[He discussed the facts.]

There was no error in the court having omitted to define the difference between murder in the first and second degrees, for it is unnecessary to give that charge where there is proof of express malice, as in this case. (Atkinson v. The State, 20 Tex., 534; O'Connell v. The State, 18 Tex., 364.)

The mere fact of the deceased having made threats against the appellant, without evincing any desire or intention to execute, is no excuse for lying in wait and murdering the deceased, who was at the time traveling on a public road, not molesting any one. (Lander v. The State, 12 Tex., 473.) For the appellant to excuse himself on the ground of threats made by the deceased, it is incumbent on him to prove that the deceased at the time of the killing manifested an intention to execute the threat made. (Pen. Code, Art. 612, O. & W. Dig.)

LINDSAY, J.—This was an indictment for murder charged to have been committed by the appellant. He was found guilty of murder in the first degree, by a jury, upon the evidence and the charge of the court. A reversal is now sought, upon the ground that express malice was not proved by the state, and therefore the verdict was erroneous. We think there is enough in the testimony adduced upon the trial to show express malice, and we can perceive no such error in the charge of the court as to require our interference with the verdict and judgment of the court below. It is therefore

AFFIRMED.