# Keiser *v.* Smith.

*Trespass for an Assault and Battery.*

1. *Trespass for assault and battery; admissibility of matters of provocation.*—In an action of trespass for an assault and battery, the defendant can not give in evidence, in mitigation of damages, matters of provocation on the part of the plaintiff, unless they happened contemporaneously with the assault and battery, or so recently prior thereto as to in-

31

[Keiser v. Smith.]

duce the presumption that the assault was committed under the immediate influence of the passion excited by the provocation.

2. *Same ; "cooling time " the test as to admissibility of provocation.*—In such case the test is, whether the "blood had time to cool," or, in other words, whether there was reasonable cooling time between the giving of the provocation, and the commission of the assault and battery.

3. *Same ; cooling time a question for the court.*—Whether there is reasonable cooling time in such case, is a question of law, to be decided by court, and not of fact, to be determined by the jury.

4. *Same ; when provocation not admissible.*—*Held*, under the principles above stated, and the facts of this case, that a libel, published in plaintiff's newspaper in the morning of the day on which the plaintiff was assaulted, the assault having been committed in the afternoon, was inadmissible in mitigation of damages.

APPEAL from Lee Circuit Court.

Tried before Hon. H. D. CLAYTON.

The facts are sufficiently stated in the opinion.

J. M. CHILTON, for appellant.—(1) The court erred in admitting the newspaper articles in evidence. " The provocation, to entitle it to be given in evidence in mitigation, must be so recent and immediate as to induce the presumption, that the violence was committed under the immediate influence of the feelings and passions excited by it."—Sedg. on Dam. p. 688; *Ireland v. Elliott*, 5 Iowa, 478; *Willis v. Forrest*, 2 Duer, 310; *Collins v. Todd*, 17 Mo. 537; *Tyson v. Booth*, 100 Mass. 258; *Coxe v. Whitney*, 9 Mo. 527; *Rochester v. Anderson*, 1 Bibb, 428; *Terry v. Eastland*, 1 Stew. 156. (3) The court erred in charging the jury, in substance, that mitigating circumstances might, if they deemed them sufficient, reduce the damages to a nominal sum. There was proof of *actual* damages for loss of time and doctor's bill. These damages could not be reduced by proof of mitigating circumstances.—*Birchard v. Booth*, 4 Wisc. 85; Sedg. on Dam. p. 688, and note.

WM. H. BARNES, *contra*. (No brief came to the hands of the reporter.)

SOMERVILLE, J.—The action is one of trespass for an assault and battery committed on the appellant, Keiser, by the appellee. The defendant, under the plea of the general issue, offered in evidence, to mitigate damages, certain libellous articles published by the plaintiff in a newspaper called the *Opelika Times*, and defamatory of one D. B. Smith, a brother of the defendant. The two brothers, accompanied by one Dowdell, went to the office of the plaintiff, and, after making an ineffectual demand of retraction, severely beat the plaintiff. The court admitted the libellous articles, published in the forenoon of the same day the assault and battery was committed,

and charged the jury, in effect, that they were a provocation which might be considered in mitigation of damages. The finding of the jury was, accordingly, for only nominal damages.

The question presented is one which has not been before decided by this court, and we fully appreciate its importance as affecting most seriously the peace and good order of society.

We are clearly of the opinion that the court erred in admitting this evidence. If the libels had been written of the defendant himself, instead of his brother, or if the brother had been sued with him in this action as a co-trespasser, they would not have been legal evidence, either as justification, or in mitigation of damages.

The rule is stated by Mr. Greenleaf as follows: "Under the general issue, the defendant, in mitigation of damages, may give in evidence a *provocation* by the plaintiff, provided it was so recent and immediate as to induce a presumption that the violence was committed under the *immediate influence of the passion* thus wrongfully excited by the plaintiff."—2 Greenl. Ev. § 93.

"No words of provocation will constitute a defense," says Mr. Field in his work on Damages, "though they may be grounds for the reduction of damages. The question on this point," he observes, "generally is, whether *the blood had time to cool*, and whether the provocation and assault formed *parts of one transaction*."—Field on Dam. p. 475, § 604.

Mr. Sedgwick says: "The defendant can not give in evidence, in mitigation of damages, the acts or declarations of the plaintiff, *at a different time*, or any antecedent facts, which are not fairly to be considered as *part of one and the same transaction*, though they may have been *ever so irritating or provoking*."—2 Sedg. Dam. (7th Ed.) 525 [547], p. 524, *note.* So it is said by Mr. Waterman, that such matters of provocation, in order to be admissible, must have "immediately preceded the battery, and naturally have provoked it."—1 Waterman on Trespass, § 266.

Mr. Sutherland states the principle in substance the same as the above mentioned authors, and remarks that "the law mercifully makes this concession to the weakness and infirmities of human nature, which subject it to uncontrollable influences when under great and maddening excitement, superinduced by insults and threats." "The mitigating effect of the provocation," he justly adds, "is spent when there has been *time for reflection, and for the passion excited by it to cool*."—1 Sutherland on Damages, 227-8.

These views are, in our judgment, fully sustained by the uniform current of decisions in this country for the past three-quarters of a century.

In the case of *Avery v. Ray*, 1 Mass. 11, which was decided

in 1804, and has since become a leading case, often followed and approved, it was ruled, that the defendant could give in evidence, in mitigation of damages, immediate provocation, such as happened *at the time* of the assault, but not such as happened *previously.* It was observed, in this case, by SEDGWICK, J., that, while he favored the admission of such mitigating circumstances on a liberal scale, "to admit such evidence, where the blood had had time to cool, would be extending the rule so as to render it impossible to say where the court should stop."

The case of *Lee v. Woolsey*, 19 John. 319, was an action of assault and battery for horsewhipping the plaintiff. The defendant offered to prove, in mitigation of damages, that, on the day previous, the plaintiff had made scandalous insinuations against him, of which defendant had been informed, and *which he had stated at the time* of the assault as the *reason of the attack.* The court were unanimous in the opinion that the evidence was properly rejected. Mr. Justice SPENCER forcibly said : "It appears to me neither to comport with sound policy nor law to allow an inquiry into antecedent facts in such a case as this, unless they are fairly to be considered as part of one and the same transaction. A contrary course *would greatly encourage breaches of the peace, personal rencounters, and every species of brutal force, and would tend to uncivilize the community.*"

In *Willis v. Forrest*, 2 Duer, 310, (a case afterwards affirmed by the Court of Appeals of New York), the court excluded from evidence sundry libels published by the plaintiff of the defendant, and also testimony of a previous criminal intimacy, lasting for several years, between defendant's wife and plaintiff, basing its ruling upon the authority of *Avery v. Ray*, 1 Mass. 11, which we have above cited.

In *Ireland v. Elliott*, 5 Iowa, 478, a like ruling was made, the court observing : "If the defendant's assault was committed after time for reflection and coolness, and under circumstances leading to the presumption that it was in revenge, then he stands in the position of an original trespasser, and the words applied to him will not amount even to an extenuation."

This case was followed in *Thrall v. Knapp*, 17 Iowa, 468, where the following rule was declared by DILLON, J. : "The clear distinction is this, *contemporaneous* provocations of words or acts are admissible, but *previous* provocations are not. *And the test* is, *whether 'the blood had time to cool.'*" "These rules," he continued, "are founded upon a sound and enlightened public policy, which discountenances the entertaining of revengeful feelings, breaches of the public peace, and the taking by individuals of the law into their own hands, and administering

a species of rude, dangerous and barbarous justice by force and violence."

In *Collins v. Todd*, 17 Mo. 537, very abusive language used by the plaintiff towards defendant's niece and sister-in-law, a day or two before the assault, was held inadmissible in mitigation. It was declared by the court that where there was time for deliberation, "the peace of society requires that men should suppress their passions, and neither reason nor law will suffer them to claim a diminution of their responsibility." The same court, in *Coxe v. Whitney*, 9 Mo. 527, refused to admit a libel published by the plaintiff in his newspaper, a day or two previous to the assault, reflecting in defamatory terms upon the moral character of defendant's wife.

The whole theory of the mitigation of damages in such cases was said, in a very early decision, to be based upon the respect entertained by the law to the frailty of human passions, which looks with an eye of some indulgence upon the violation of good order produced in the moment of irritation and excitement from abusive language.—*Rochester v. Anderson*, 1 Bibb (Ky.), 428. It was said by Boyle, J., in this case, in language recognized as expressing the logic of the law: "If opprobious words, for which the law allows an action, have been used of a man, the law furnishes a remedy, and will not permit him to redress his own wrong. If they are so frivolous as not to be deemed by the law actionable, a peaceful citizen, when he has had time for reflection, will consult the peace and good order of society, as well as his own dignity, in disregarding them."

I can find but one adjudged case contrary to these views, and that was a *nisi prius* ruling made by Lord Abinger, in *Fraser v. Berkeley*, 7. C. & P. 621, decided in 1836. The defendant there had assaulted and beat the plaintiff, who was then the publisher of *Frazer's Magazine*, because of a libel published by the plaintiff two or three days previously, defaming the defendant and his family. This libel was admitted in mitigation of damages, in entire disregard, as we think, of sound reason and the wise policy of the law. I am aware of no case in England or America where it has been since approved.

The only proper test, at least in cases where the provocation and assault do not form parts of one continued transaction is, *whether "the blood had time to cool."* The criterion is not alone how many days or even *hours* had elapsed since the provocation was given, although this consideration is of vast significancy in ascertaining the main inquiry.—*Dolan v. Fagan*, 63 Barb. (N. Y.) 73; 1 Water. Tresp. § 268; 1 Hilliard on Torts (4th Ed.), 197, *note* (b).

What constitutes a sufficiency of cooling time, or of provocation, is necessarily a question of law, and not of fact, the court

being required to decide it preliminary to the admission or exclusion of the evidence offered in mitigation, analogous to the rule governing in cases of homicide.—2 Bish. on Cr. Law, § 713; *Felix v. The State*, 18 Ala. 720.

It is manifest that no absolute rule for all possible cases can be declared. The time in which a man of ordinary prudence would cool, under a similar state of circumstances, is usually designated as a reasonable time for such purpose. The law can not preserve its own integrity, and at the same time admit the proposition, sometimes sanctioned by a sentiment originating in too tender regard for human frailty, that calm reflection on legal wrongs may justly increase one's rage in proportion to the length of time spent in their contemplation. *The recognition of such a principle would speedily undermine, and ultimately destroy that peace of society, which is absolutely essential to the very existence of good government.*

It has been said by high and ancient authority, "If two men fall out in the *morning*, and meet and fight in the *afternoon*, and one of them is slain, this is murder, for there was time to allay the heat, and their after-meeting is of malice."—*Rex v. Legg*, J. Kel. 27; 2 Bish. on Cr. Law, § 712; 1 Hawk. P. C. 190, § 22. One hour has been adjudged, in one case, to be a sufficient cooling time, and three hours in another.—2 Bish. on Cr. Law, § 712; *Johnson's case*, 30 Tex. 748. "The act must be imputable to human infirmity only, and not to deliberate judgment and malignity of heart. Any diversion of the mind to other thoughts, or to business, or any circumstances showing deliberation or reflection, as well as the mere lapse of time, repel the idea of passion."—Clark's Man. Cr. Law, p. 69, § 436, and cases cited.

There is no difficulty whatever about the application of these principles to the present case. The libellous articles appeared in the *Opelika Times*, which was issued on the morning of the day of the assault. The defendant read them in the forenoon, or about midday of the same day, and conversed with his brother, D. B. Smith, about it an hour or more prior to the difficulty, which occurred between three and four o'clock of the same afternoon. The conduct of the brother seems to have been characterized by both plan and deliberation. He read the articles several hours before the assault, after which he seems to have attended to business about his store, besides going to a bank in another part of the city. He then went home and took his dinner, came back to the store, and armed himself with a pistol and stick. He then, in company with the defendant and one Dowdell, went in search of plaintiff at his place of business, where by co-operation of the three, the plaintiff was assaulted and beat very violently. The facts evince great pre-

meditation and design. There was ample time, in the eye of the law, for hot blood to cool. The defendant had no right, either alone or by conspiracy with others, to take the law in his own hands and avenge a publication, however scandalous, by blows, inflicted under such circumstances of deliberation.

The court erred in admitting the libels in evidence, and in many of its rulings in reference to their legal effect, and its judgment must be reversed, and the cause remanded for a new trial.