# Beasley *v.* The State.

## *Murder.*

(Decided February 13, 1913.   61 South. 259.)

1. *Homicide; Evidence; Threats.*—Where the evidence in a homicide case is conflicting as to who was the aggressor, a defendant may show previous ill will or threats by deceased.

2. *Same.*—The fact that threats made by deceased had been communicated to the accused does not warrant him in commencing the attack until deceased has made some overt act or some hostile demonstration, though a defendant may act upon a slighter demonstration in such an instance than if there had been no threats made. .

[Beasley v. The State.]

3. *Same; Overt Act.*—The acts which cause a defendant to really believe himself to be in danger need not be real,. but may be .appearances only, in view of previous threats made by deceased; but this rule applies only to defensive measures, and does not apply where accused is the aggressor.

4. *Same; Jury Question.*—In view of circumstances leading to the killing, whether threats are a justification is a jury question; consequently where defendant testified that deceased cocked his rifle and started to turn upon him, evidence of previous threats made by deceased became admissible.

5. *Same; Instructions; Self-Defense.*—Charges on self-defense are erroneous if they omit the requirement of a bona fide belief by defendant that he is in danger.

6. *Same; Duty to Retreat.*—Where there was evidence that defendant was in peril, it appearing from his evidence that deceased was about to make a murderous attack upon him, he was under no duty to retreat, and a charge otherwise proper was not rendered bad for omitting the duty to retreat.

(Dowdell, C. J., Anderson and McClellan, JJ., dissent in part.)

APPEAL from Montgomery City Court.

Heard before Hon. ARMSTEAD BROWN.

Yank Beasley was indicted for the murder of Ephriam White, convicted, and sentenced to be hanged, and he appeals. Reversed and remanded.

The following charges were refused to defendant:

(1) "The court charges the jury that if they are reasonably satisfied from the evidence in this case that there was a present, impending danger, real or apparent, to the life or limb, or grievous bodily harm, from which there was no probable means of escape, and that the deceased was the aggressor, they cannot convict the defendant."

(2) "The court charges the jury that if the defendant shot under a bona fide belief that his life was in danger, and had under all the circumstances reasonable cause to believe that he was in imminent danger at the moment the shot was fired, then the defendant cannot be convicted."

The evidence tended to show that Ephriam White came to his death about January 2, 1912, from the

effects of a bullet wound fired by Yank Beasley. It appears that defendant and deceased, with several others, were in a wagon going home, and that they talked about 35 or 40 minutes before the shooting; that at the time of the shooting Ephriam White was sitting on the dashboard of the wagon, leaning forward, with a rifle across his lap; and that Yank was sitting on the spring seat about the middle of the wagon. The defendant attempted to bring out by the second witness introduced for the state the fact that White had tried to kill Beasley; but, on objection by the solicitor, the evidence was excluded. When Beasley took the stand to testify in his own behalf, he stated that after the others had gotten out of the wagon, and he was preparing to leave, White got up and clicked his gun twice, and that as he got about three-quarters up he turned his rifle towards defendant. After this testimony defendant was asked if he had had any previous difficulty with White, which was, on motion of the solicitor excluded. Also: "Did Ephriam White shoot at you within two weeks prior to this killing?" Objection to which was also sustained. Also: "State whether or not, within the two weeks prior to the killing, White shot at you twice, one time shooting through your hat, and at another time shooting buckshot into you." Also: "Did Hannah White tell you on the day of the killing that Ephriam White was looking for you to kill you?" Also similar questions as to Tom Carrison; also as to Hannah Harris. Later the defendant put up these various witnesses to show a communication to him of the threats sought to be brought out by the question above referred to, but, on objection by the state, was not permitted to do so.

WEIL, STAKELY & VARDAMAN, for appellant. Where there is evidence tending to prove overt acts or a hostile

[Beasley v. The State.]

demonstration on the part of deceased, previous threats made by deceased against defendant become admissible.—*Turner v. State,* 40 South. 823; *Jackson v. State,* 59 South. 632; *Story v. State,* 71 Ala. 330. The fact and general nature of a similar difficulty between defendant and deceased was admissible in view of the tendency of some of the evidence to support the theory of self-defense.—*Jackson v. State, supra; Gunter v. State,* 20 South. 632. The question of overt act which will justify a homicide is a question for the jury.—65 Tenn. 452; 160 U. S. 203; 27 South. 643; 27 Tex. 758. There is no necessity that there should be actual danger, since under the circumstances of this case, a defendant may act on the reasonable appearance of things.—*De-Arman v. State,* 71 Ala. 351; *McCain v. State,* 49 South. 361. Under the circumstances of this case, the duty of retreating was not on defendant.—*DeArman v. State, supra.*

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. It is a well settled rule of law that if there is any evidence which, if believed, would present a case of self-defense, the defendant may then go further and strengthen it by showing ill will, threats, or a previous difficulty, with deceased, but it is insisted that under the facts in this case, there was no evidence of any act or demonstration on the part of deceased indicating any intention of committing an assault on defendant.—*Harrison v. State,* 24 Ala. 66; *Lewis v. State,* 51 Ala. 1; *Rogers v. State,* 62 Ala. 170; *Holly v. State,* 75 Ala. 14; *Howard v. State,* 110 Ala. 92. There was not a sufficient overt act to indicate a felonious assault, there was no apparent attack and no violence.—*Lewis v. State,*

*supra; Rogers v. State, supra; Bain v. State,* 70 Ala. 4; *King v. State,* 90 Ala. 612; *Keith v. State,* 97 Ala. 32.

ANDERSON, J.—The rule is well settled that, when there is a conflict in the evidence, in homicide cases, as to who was the aggressor, the accused may strengthen his defense by showing ill will, threats by the deceased, or a previous difficulty. It is also a well-established doctrine that when the deceased has made threats against the defendant, and which have been communicated to him, he is not thereby authorized to commence an attack or to act upon said communicated threats until the deceased has committed some overt act or made some hostile demonstration; but in such case the law allows the threatened party to act with greater dispatch and upon a perhaps slighter overt act than is required on the part of a defendant who was not threatened by the deceased, or between whom and the accused there was no bad blood or ill will. The mere fear of an attack will not justify action on the part of the defendant; and he cannot avail himself of communicated threats until he first shows some overt act or hostile demonstration on the part of the deceased which would be calculated to reasonably impress upon him the bona fide belief that he was in imminent peril. This does not mean that the supposed facts generating the belief must be real; for they may be appearances only, and yet justify as prompt action as if they were real.—*Jackson v. State,* 78 Ala. 471; *Story v. State,* 71 Ala. 330.

But this principle is confined to defensive measures. It furnishes no excuse or palliation for aggressive action, nor when the difficulty is brought on or sought by the accused.—*De Arman v. State,* 71 Ala. 351. "Whether * * * threats, taken in connection with the circumstances of the affray leading to and accompanying the

killing, are sufficient to justify the act of homicide, is a question of fact for the jury; and it is not permissible for the court to determine it as matter of law. They cannot be excluded if there is the slightest evidence tending to prove a hostile demonstration, which can be reasonably interpreted as placing the accused, at the time of the killing, in apparent imminent danger to life or of other grievous bodily harm."—*Turner v. State,* 160 Ala. 40, 49 South. 828; *Roberts v. State,* 68 Ala. 156. So the question is: Did the defendant's evidence tend to establish such a hostile demonstration as could be reasonably interpreted as placing the defendant, at the time he shot, in apparent peril?

It may be true that the defendant's testimony was opposed by the great preponderance of the evidence, and that his version of the action of the deceased may have been inconsistent with the facts attending the trip from Montgomery to the place of the killing, both being in the same wagon, and no fuss or cross words passed between them, yet the undisputed evidence showed that deceased had a rifle across his lap, the defendant said he heard him cock it, and saw him attempt to change its position, and at the same time starting to turn upon him; and we think that the trial court erred in excluding the threats, as well as evidence of a previous difficulty, as it was a question for the jury as to whether or not this action was sufficient to reasonably indicate immediate danger, and whether or not the defendant could safely retreat. We do not think that the evidence had to show that the deceased had turned entirely around, and had covered the defendant with the rifle, or had shot him, before the conduct of the deceased could be considered an overt act or hostile demonstration; for, if such was the case, the defendant would have to wait until he was shot or placed at a great dis-

[Beasley v. The State.]

advantage before attempting to protect himself against an assailant who had not only threatened his life, but between whom and the defendant there existed bad blood. More prompt and decisive means of defense are justified, when the assailant is of known violent and bloodthirsty nature, or when he has threatened the life of the accused, and said threats have been communicated.—*De Arman's Case, supra.* In determining whether or not the defendant has established a predicate for the admission of threats, whether the evidence is consistent or not, if any of it tends to establish a hostile demonstration such as would reasonably place him in imminent peril, he is entitled to the admission of said threats, unless, of course, the other elements of self-defense are lacking.

Charge 1, requested by the defendant, if not otherwise bad, pretermits a reasonable or bona fide belief by the defendant that his life was in danger.

Charge 2, refused the defendant, if not otherwise bad, pretermits the defendant's duty to retreat. It was a question for the jury, under the circumstances, to determine whether or not the defendant could have retreated without increasing his peril.—*Abernathy v. State,* 129 Ala. 85, 29 South. 844; *Suell v. Derricott,* 161 Ala. 268, 49 South. 895, 23 L. R. A. (N. S.) 996, 18 Ann. Cas. 636.

For the errors above designated, the judgment of the city court is reversed, and the cause is remanded.

Reversed and remanded.


DOWDELL, C. J., and McCLELLAN, J., concur in the opinion.

MAYFIELD, SAYRE, SOMERVILLE, and DE GRAFFENRIED, JJ., concur in the conclusion and the opinion, except as to charge 2. They think that this charge should have

been given, as there was evidence from which the jury could infer that the defendant was in peril; and, if defendant's version that the deceased was about to make a murderous attack upon him was true, he was under no duty to retreat.—*Cook v. State,* 5 Ala. App. 11, 59 South. 519; *Storey v. State,* 71 Ala. 337.