# Langham *v.* The State.

## *Murder.*

(Decided January 14, 1915.    Rehearing denied February 2, 1915.
68 South. 504.)

1. *Homicide; Self-Defense.*—One who commits acts likely to produce a combat, or in any way invite a difficulty, and in such slays his adversary, cannot invoke the law of self-defense, even if the killing was necessary to protect himself; to rely on self-defense, the slayer must not only be reasonably, but absolutely, free from fault.

2. *Same; Threats.*—Threats made by a decedent against a defendant and communicated to defendant, in connection with evidence that decedent was a man of known violent nature, are admissible to show defendant's right to act on a slighter demonstration by decedent than otherwise he would be authorized to do.

[Langham v. The State.]

3. *Same.*—The fact that defendant knew of the threats made against him by decedent does not excuse or palliate aggressive action by him, in the absence of an overt act or demonstration by the other, and such threats have no bearing where the necessity to defend was brought about by the wrongful act of the defendant, and knowledge of such threats, and of the dangerous character of decedent imposed a duty on defendant to be extremely cautious in his conduct.

4. *Same.*—A charge asserting that it was not necessary that there should be actual danger, but if the circumstances were such as to impress defendant with a reasonable belief, and he did believe that it was necessary to shoot his adversary to prevent death or great bodily harm to the person, ignored evidence in the case tending to show that defendant was not free from fault in bringing on the difficulty, and also was invasive of the province of the jury, and was properly refused.

5. *Same.*—Where there was evidence from which the jury could find that defendant was not free from fault in bringing on the difficulty, a charge asserting that the proof showed that the killing was done in a sudden rencounter, and if defendant, as a reasonable man, had a right to believe, and did believe from the language and conduct of deceased taken in connection with previous threats that at the time defendant fired the fatal shot he was in danger of death or great bodily harm, and that to have attempted to have retreated would have been dangerous to life or limb, then defendant had a right to kill, not only ignored the evidence mentioned, but also gave undue prominence to parts of the evidence.

6. *Same.*—Under the evidence in this case, it was a question for the jury whether defendant was free from fault in bringing on the difficulty which caused the necessity for the killing, and the charge asserting that if the jury could not say beyond a reasonable doubt whether defendant acted on a well grounded and reasonable belief that it was necessary to kill deceased to save himself from death or great bodily harm, or that he shot before the necessity arose, defendant was entitled to an acquittal, provided there was no reasonable way of escape open to him, was properly refused for disregarding defendant's freedom from fault in provoking the difficulty.

7. *Same; Manslaughter; Intent.*—A positive intent to kill is not an essential element of manslaughter in the first degree; it is enough that the slayer voluntarily sets in motion unlawful force from which ordinarily death or great bodily harm might result, and death does so result.

8. *Same.*—While a positive intent to kill is not an essential element of manslaughter, it may enter into the offense, and evidence tending to show such intent, such as that defendant, having cause to anticipate trouble, armed himself, is material in connection with evidence that the anticipated trouble occurred, and that defendant used such arms to kill his adversary.

9. *Witnesses; Competency; Wife.*—The wife of a defendant is not a competent witness to testify in his behalf.

10. *Trial; Argument of Counsel.*—Where it was undisputed that defendant was armed at the time the difficulty arose and where defendant testified that he stayed at his uncle's the night before, and

on the following day was in and around town, and that the trouble occurred that afternoon before he returned home, argument by the solicitor that the presumption was that defendant started out that morning with a pistol, was a justifiable inference from the evidence, and not erroneous.

11. *Evidence; Former Testimony.*—Where defendant, after his preliminary examination, married one of the witnesses who had testified for him on such examination, he thereby voluntarily rendered her incompetent to testify at the trial, and hence, cannot have the benefit of her sworn testimony given at the preliminary trial, notwithstanding the other elements existed which would ordinarily render such evidence competent.

APPEAL from Conecuh Circuit Court.

Heard before Hon. A. E. GAMBLE.

Charlie Langham was convicted of manslaughter, and he appeals. Affirmed.

The facts sufficiently appear. The following charges were refused to defendant:

(2) If, after looking at all the evidence in the case, your minds are left in such a state of uncertainty that you cannot say beyond a reasonable doubt whether defendant acted upon the well-grounded and reasonable belief that it was necessary to shoot and take the life of John Bell to save himself from great bodily harm or death, or that he shot before such impending necessity arose, then this is such a doubt as will entitle defendant to an acquittal, provided there was no reasonable mode open to defendant to retreat without increasing his peril.

(4) Unless you believe beyond all reasonable doubt from the evidence in this case that defendant shot John Bell intending at the time to kill him, and that such shooting was unlawful, you must find defendant not guilty. (17) It is not necessary that there should be actual danger of death or great bodily harm in order to justify the taking of human life, but, if the jury is satisfied from all the evidence in the case that the circumstances attending the firing of the fatal shot were

such as to impress defendant with the reasonable belief, and that defendant did believe that at the time of the firing of the fatal shot that it was necessary to shoot in order to prevent death or great bodily harm to a person, then you must acquit.

(18) The proof shows that the killing was done in a sudden rencounter, and defendant sets up the defense that he did the killing in his own necessary defense. If you believe from the evidence that at the time of the killing defendant had the right as a reasonable man to believe and did believe from the language and conduct of John Bell, taken in connection with the previous threats which are in evidence, that defendant was, at the time he fired the fatal shot, in danger of death or great bodily harm, and that to have attempted to have retreated from the position in which he was at the time would have been dangerous to life and limb, then he had the right to take the life of John Bell.

PAGE, McMILLAN & BROOKS and HAMILTON & CRUMPTON, for appellant. The argument of the solicitor objected to by defendant should have been excluded.— *Dunmore v. State,* 115 Ala. 69; *Pitts v. State,* 140 Ala. 70; *Bardell v. State,* 144 Ala. 54. Charge 2 should have been given.—*Harris v. State,* 96 Ala. 24; *Beasley v. State,* 181 Ala. 29. The testimony of Miss Whitten taken on the preliminary hearing should have been admitted notwithstanding at the time of the trial she was the wife of defendant.—187 Pa. 170; 2 Chamberlayne Mod. Ev. § 1624. Charge 4 should have been given.— *Harrington v. State,* 83 Ala. 9; *McManus v. State,* 36 Ala. 285.

R. C. BRICKELL, Attorney General and W. L. MARTIN, Assistant Attorney General, for the State. The court was not in error in declining to admit the testimony of

Miss Whitten after she became the wife of defendant.—
*Holly v. State,* 105 Ala. 100; *Hussey v. State,* 87 Ala.
121; *Johnson v. State,* 47 Ala. 9. The argument of the
solicitor was based on facts from which such infer-
ences could be drawn.—*Cross v. State,* 68 Ala. 476; *M.
J. & K. C. v. Bromberg,* 141 Ala. 258. Charges 2, 17
and 18 ignore the question of freedom from fault.—
*Story v. State,* 71 Ala. 329; *Linnehan v. State,* 113 Ala.
7. Charge 4 referred a question of law to the jury.

BROWN, J.—The necessity that will excuse the tak-
ing of human life must not have been produced or invit-
ed by the wrongful act or word of the slayer. He must
be mindful of his acts or conduct which are likely to pro-
duce a deadly combat; and, if his acts or conduct show
a willingness to enter into combat, or if his acts or
words in any way invite it, in the eye of the law he has
produced a necessity for slaying his adversary, and he
cannot invoke the doctrine of self-defense. It is not
enough that he is reasonably free from fault. He must
be entirely free.—*Brewer v. State,* 160 Ala. 66, 49 South.
336; *Reese v. State,* 135 Ala. 13, 33 South. 672; *Stall-
worth v. State,* 146 Ala. 8, 41 South. 184.

The evidence is without conflict that the defendant
killed the deceased by shooting him with a pistol; that
the fatal rencounter occurred on Sunday evening at
Sullivan's gin near Castleberry; and the evidence tend-
ed to show that immediately before the fatal shots were
fired the deceased struck the defendant with a knife
closed in his hand, inflicting a slight wound on the de-
fendant's face. Just before the difficulty occurred the
defendant was driving along the road in the direction of
Castleberry, and passed the deceased and the witness
Thornton standing on the side of the road, when deceas-
ed accosted the defendant, saying to him that he want-

ed to see him a minute. The defendant testified that
at the time deceased spoke to him he did not see deceas·
ed and Thornton, but after deceased spoke he looked
and saw them standing on the side of the road, and that
he replied to deceased that he could not stop until he
got across the bridge, that he would wait for him after
he crossed the bridge, and that he stopped and waited
for the deceased, who came on up behind the buggy, and
invited him off to one side to speak to him a minute,
and that deceased and the defendant walked off to one
side toward Mr. Sullivan's gin, where they talked about
half a minute. The evidence tends to show that the sub-
ject of this conversation was some "talk" that the de-
fendant had had about the sister of the deceased, and
the deceased was demanding a retraction of what the de-
fendant had said about deceased's sister, or proof that
defendant had not made such statements; that there-
upon the defendant and the deceased returned to the
defendant's buggy, where Thornton and several other
persons had assembled, and there a wordy altercation
took place between the defendant and the deceased, and
deceased struck the defendant on the face knocking him
down against the buggy, and the defendant drew his
pistol and fired. The evidence further tends to show
that, as a result of a rivalry between defendant and
the deceased in their attention to a young lady whom
the defendant afterward married, bad blood existed be-
tween them, and the defendant proved that a short time
before the killing the deceased told Jim Burch that he
(deceased) "would kill the damn son of a bitch" (re-
ferring to the defendant), and that this threat was com-
municated to the defendant a short time prior to the
killing.

Communicated threats made by the deceased against
the defendant, in connection with the evidence tending

to show that deceased was a man of known violent and bloodthirsty nature, were admissible as a basis for more prompt action on the part of the defendant to defend himself against a felonious assault threatened by overt act or hostile demonstration; and in such cases the law recognizes the right of one so threatened to act more promptly and on slighter overt act or demonstration than it would in the absence of such proof.—*Beasley v. State,* 181 Ala. 32, 61 South. 259; *Jackson v. State,* 78 Ala. 471; *Storey v. State,* 71 Ala. 330.

This principle, however, is confined exclusively to defensive measures, and it furnishes no excuse or palliation for aggressive action in the absence of an overt act or demonstration sufficient to impress the mind of a reasonable man that a felonious assault is threatened, and has no application where the necessity to defend against such assault has been produced by wrongful act, word, or deed on the part of the slayer.—*Beasley v. State, supra; De Arman v. State,* 71 Ala. 355. The threat of the deceased to take the life of the defendant, in connection with the ill will or bad blood that existed between them, and the nature of the deceased as a violent, blood-thirsty person, imposed upon the defendant the duty of being extremely cautious in his conduct toward the deceased, and the doing of any act by him under these circumstances that contributed to bringing on a difficulty would deprive him of the right of self-defense.—*Reese v. State,* 135 Ala. 13, 33 South. 672; *Stallworth v. State,* 146 Ala. 8, 41 South. 184.

In view of the threat of the deceased, and the evidence tending to show bad blood or ill will between the deceased and the defendant, in connection with the other evidence in the case, it was a question for the jury as to whether or not the defendant was at fault in not disregarding the request of the deceased for him to stop,

and in stopping and engaging in a wordy altercation with the deceased, which brought about the fatal rencounter resulting in the killing.  The application of these principles justifies the action of the court in refusing charge 2 requested by the defendant. This charge ignored the evidence tending to show that the defendant was not entirely free from fault.  The case of *Harris v. State* is easily differentiated from this case.  In that case the only evidence that the defendant was at fault in bringing on the difficulty was a mere "inference" from the tendency of the state's evidence toward showing that he fired the first shot after the door was opened, and charge 6 in that case does not ignore this inference, but submits the question to the jury, and instructed them that, if they had a reasonable doubt as to whether the defendant shot before the impending necessity arose, the defendant was entitled to that doubt; the burden of proof on that issue being on the state. The court said:  "The defendant being under no duty to retreat, and there being no evidence that he was at fault in bringing on the difficulty, other than by way of inference from that tendency of the state's evidence toward showing that he fired the    *   *   *    shot after the door was opened, he should not have been convicted, if the jury from all the evidence entertained a reasonable 'doubt whether he acted upon the well-grounded and reasonable belief that it was necessary to shoot and take the life of Lovelace to save himself from great bodily harm or   *   *   *   death, or that he shot before such impending necessity arose.'  If the jury could not say beyond all reasonable doubt which of these states of fact in reality existed, they could not say with that near approach to certainty which the law requires that he acted under circumstances which did not justify him in taking life; the onus of proving the circumstances, in

so far as they bore upon the question of defendant's fault in bringing on the difficulty, being on the prosecution."—*Harris v. State,* 96 Ala. 27, 11 South. 257.

In the case of *Beasley v. State,* 181 Ala. 28, 61 South. 259, there was no evidence tending to show that the defendant was at fault, and it was on that theory and the further theory that there were tendencies in the evidence that White made a murderous assault on Beasley before he fired the shot that killed White that the charge in that case was held good.

A positive intention to kill is not an essential element of manslaughter in the first degree. It is enough that the slayer voluntarily sets in motion unlawful force from which ordinarily, in the usual course of events, death or great bodily harm may result; and, if death ensues, the slayer is guilty of manslaughter in the first degree.—*Fowler v. State,* 161 Ala. 1, 49 South. 788; *Lewis v. State,* 96 Ala. 6, 11 South. 259, 38 Am. St. Rep. 75; *Reynolds v. State,* 154 Ala. 17, 45 South. 894; *Smith v. State,* 154 Ala. 34, 45 South. 626; *Fowler v. State,* 155 Ala. 28, 45 South. 913. This principle justified the court in the refusal of charge 4 requested by the defendant.

Charge 17 invades the province of the jury, in that it ignores the evidence tending to show that the defendant was not free from fault. Charge 18 is subject to the same criticism as charge 17, and, in addition, it gives undue prominence to parts of the evidence. The only other charge refused to the defendant was the affirmative charge, and, under the evidence in the case, that was properly refused.

The defendant's wife was not a competent witness, and could not testify in his behalf.—*Newman v. State,* 160 Ala. 102, 49 South. 786; *Salter v. State,* 92 Ala. 68, 9 South. 550; *Holley v. State,* 105 Ala. 100, 17 South. 102.

The defendant testified on cross-examination that on Saturday night before the killing on Sunday he stayed at his uncle's near London, that he went from there to town to Mr. Baggett's, and that he spent the day in and around Castleberry (the killing occurring before he returned to his home) ; and there was evidence tending to show that the weapon used was a pistol which he drew from his pocket after the deceased had assaulted him. In one of his arguments to the jury, which the record does not disclose, the solicitor made the following statement: "The presumption is that the defendant started out on Sunday morning with a pistol." The defendant made timely objection to this argument, and made motion to exclude it on the ground that there was no presumption that the defendant started out on Sunday morning with a pistol, and there was no evidence of this fact. The evidence referred to clearly afforded an inference that the defendant started out on the morning of the killing armed with a pistol. It was undisputed that he had one on his person at the time of the killing, and this, in connection with the evidence that he spent the night away from home, and that he spent the day in and around Castleberry, clearly justified the jury in drawing the inference that he was carrying this pistol on his person, and the fact that the defendant was armed with a weapon before and at the commencement of the altercation had a tendency to show a deadly intent at the moment of using the weapon; and specially is thus true in connection with the other evidence tending to show a state of enmity existing between the defendant and the deceased, and the deceased's violent threat to take the defendant's life, which had been communicated to the defendant. The solicitor made no reference to the fact that the pistol was concealed, and what was said in the

case of *Henson v. State* on that subject is not applicable here, but the following expression in the opinion in that case is applicable:

"That the defendant was armed with a deadly weapon before  *  *  *  the commencement of the altercation may tend to show a deadly intent at the moment of using the weapon."—*Henson v. State,* 114 Ala. 28, 22 South. 128.

The statement of the solicitor was not of a fact unsupported by, or outside of the range of, the evidence, but was a legitimate inference which the evidence afforded, and material to be considered by the jury, and was within the range of legitimate argument.—*Cross v. State,* 68 Ala. 476; *Hobbs v. State,* 74 Ala. 39; *Childress v. Childress,* 86 Ala. 77, 5 South. 775; *Pruitt v. State,* 92 Ala. 41, 9 South. 406; *McNeill v. State,* 102 Ala. 124, 15 South. 352, 48 Am. St. Rep. 17; *Mitchell v. State,* 114 Ala. 1, 22 South. 71. This differentiates the case from the case of *Dunmore v. State,* 115 Ala. 69, 22 South. 541. In that case there was no evidence authorizing an inference that the witnesses who testified in behalf of the defendant "had gotten a part of the stolen goods," and this statement of a fact clearly outside of the scope of the evidence justified the reversal of the judgment in that case.

We have carefully examined all questions presented by the record, and find no error therein. The judgment of the circuit court is affirmed.

Affirmed.

### ON REHEARING.

We are urged in the application for rehearing to re-examine the questions presented in this case, and we have again painstakingly read the record in connection

with appellant's brief, and application for rehearing, and find no reason to change the conclusion heretofore announced. If there was no evidence in the case tending to show that defendant was at fault, other than that tending to show that the defendant shot before a real impending necessity arose for such defensive action on his part, refused charge 2 embodies a correct statement of the law as applicable to the cause. But there was other evidence tending to show that defendant was not entirely free from fault. The deceased had threatened to kill him, and he knew of the threat, because his own witness told him of this threat a few days before the killing. Knowledge of this threat, no doubt, prompted the defendant to arm himself in anticipation that the deceased would attempt to carry the threat into execution, and, with this condition confronting him, he at the invitation of the deceased stopped and hitched his horse on the roadside, and engaged in an altercation with the deceased about some of the very matters that had caused the enmity between the defendant and the deceased and had given rise to the violent threat of the deceased to take defendant's life. While the evidence shows that the deceased struck the first blow, it also shows that he was not armed for deadly combat, as was the defendant.

One of our most eminent judges, speaking for the Supreme Court of this state, said: "If one assaulted, suddenly and under the maddening influence of the blow slays his assailant, and there is nothing else in the transaction, this is manslaughter, and not murder. But murder 'is frequently committed during personal rencounters into which the parties enter mutually, or in many cases in which the party slain strikes the first blow. Murderers sometimes provoke an enemy or an intended victim to assault them, that, under the protection which

the law is supposed to furnish them, they may wreak vengeance upon him who, by this contrivance, is made to appear to be the aggressor. A homicide thus perpetrated is a most atrocious murder in the first degree.' "
*Scales v. State,* 96 Ala. 75, 11 South. 124.

While apparently the deceased was the aggressor, was it not for the jury under the evidence in the case, and would they not have been justified in reaching the conclusion that the defendant, anticipating trouble, hitched his horse after crossing the bridge, knowing that this enemy was coming, and that he (the defendant) was armed for the fray? Was the defendant absolutely free from fault? Did not the principle that regards human life sacred and operates to preserve peace and good order on that occasion suggest that it was defendant's duty not to stop and wait? Under the evidence, the question of defendants freedom from fault in bringing about the necessity to take life, if they found such necessity, was for the jury.

While a positive intention to kill is not an essential element of manslaughter in the first degree, such intention is not at all foreign to this offense, but may enter into it as one of its elements. In order to constitute the offense, there must be a positive intention to kill, or the evidence must show that the defendant voluntarily set in motion unlawful force which ordinarily and in the usual course of events may result in great bodily harm, and if thereby the death of a human being is accomplished it is at least manslaughter in the first degree. Any evidence tending to show a positive intention to kill, such as that the defendant had cause to anticipate that a difficulty would occur, and, thus anticipating, arms himself with a deadly weapon which he carries about his person, is material, in connection with evidence showing that the anticipated difficulty actual-

ly occurred, and the defendant used such weapon to accomplish the death of his adversary. The evidence in this case, as we have heretofore held, was sufficient to authorize the inference that the defendant armed himself for this very occasion, and for this reason the argument of the solicitor was proper.

This admissibility of the testimony of the witness Edna Whitten given on the preliminary trial was not urged in appellant's brief, and, while this question was considered, it was not treated in the opinion disposing of the case. The question is presented thus: This witness, an unmarried woman, was examined on the preliminary trial of the defendant and testified, "He [deceased] told me he was going to kill Charlie [the defendant], shoot his heart out, the next time he saw him," that this threat was made at 2 o'clock p. m. on the day of the killing, and the evidence shows that the killing, occurred between sundown and dark. The evidence further shows that after this witness gave her testimony on the preliminary trial she became the wife of the defendant, which rendered her incompetent to testify in defendant's behalf even as to facts occurring before her marriage.—*Elmore v. State,* 140 Ala. 184, 37 South. 156; *Mickle v. State,* 21 South. 66. Under the English common law, the courts seldom, if ever, admitted the testimony of a witness given on a former trial, except in case of his death; but a review of the authorities shows that the constant tendency has been to relax this strict rule, "in order to prevent a failure of justice," and it seems- to be reasonably well settled, although the authorities are not entirely uniform, that if the right of cross-examination has been exercised, or full opportunity afforded therefor, such evidence is admissible: (1) Where the witness is dead; (2) is insane or mentally incapacitated; (3) is shown to be beyond the seas; (4) is

kept away by the contrivance of the opposite party; (5) has gone beyond the jurisdiction of the court, or his personal attendance is unobtainable by the exercise of due diligence; and (6) where the witness is alive, and his personal attendance may be obtained, if he has been rendered incompetent as a witness by subsequent occurring facts for which the party offering the testimony is not responsible, and over which he had no control.— *Pope v. State,* 183 Ala. 61, 63 South. 71; *Harwell v. State, infra* 68 South. 500; 2 Chamberlayne, Mod. Ev. § 1624; Jones on Ev. §§ 341-343; Stephens on Ev. art. 32; 16 Cyc. 1101; *Burton v. State,* 107 Ala. 71, 18 South. 240; *Reynolds v. U. S.,* 98 U. S. 145, 25 L. Ed. 244; *Bergen v. People,* 17 Ill. 426, 65 Am. Dec. 672; *Wells v. Insurance Co.,* 187 Pa. 169, 40 Atl. 802. But we have found no authority holding that, where the proponent by voluntary act has placed the witness beyond the jurisdiction of the court, or otherwise rendered personal attendance unobtainable, or by such voluntary act of the proponent the witness has become incompetent, he is entitled to make proof of the testimony of such witness on the former trial and we confidently assert that no such authority can be found. The very reason upon which the rule of admissibility is rested is that the personal attendance of the witness is unobtainable through no fault or voluntary act of the party proposing the testimony, and for this reason it would be an act of injustice not to receive the evidence. Where the reason of the rule ceases, the rule also ceases. The incompetency of the witness was occasioned in this case by the voluntary act of the defendant in marrying her and making her his wife, and he was not entitled to offer her testimony given on the preliminary hearing of the case.

The application for hearing is overruled.