57 So.2d 388

## BYRD v. STATE.

### 2 Div. 291.

Supreme Court of Alabama.

Jan. 3, 1952.

Rehearing Denied March 13, 1952.

H. A. Lloyd and W. W. Dinning, Demopolis, for appellant.

Si Garrett, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

102

STAKELY, Justice.

Charlie Byrd was indicted for the murder of Neely Trigg. Trial resulted in a conviction and sentence of murder in the first degree. The death penalty was imposed. The appeal comes here under the automatic appeal act.

Evidence for the state tended to show that on, Sunday, October 29, 1950, about 11:45 A. M. the car of the deceased, Neely Trigg, having run out of gas was parked at the side of a street in the City of Demopolis. The deceased was standing outside of his car smoothing the seat covers on the front seat of his automobile. Charlie Byrd appeared on the opposite side of the street with a single-barrel shot gun. Charlie Byrd called, "Hey Neely" and shot at the deceased through the window of the car. Charlie Byrd then broke his gun, blew the smoke from the gun and inserted a fresh shell. Dropping to his knees, he fired under the car at the legs of the deceased. He then reloaded his gun, walked across the street around the car and fired a third blast into the head of the prostrate Neely Trigg. As a result of the last shot the whole top of Neely Trigg's head was blown off. Neely Trigg had nothing in his hand and did nothing but dodge around behind his car. No gun or other weapon was found on the person of the deceased or in his car or in the immediate vicinity. Tendencies of the evidence for the state further showed that after the killing, Charlie Byrd attempted to get another man to take him across the river in a boat. Testimony for the state further tended to show that when apprehended Charlie Byrd stated that the deceased had threatened him about eight hours prior to the shooting and had wounded him. He further stated that he was on his way to see a doctor when the shooting occurred. He admitted shooting at Neely Trigg three times.

The defendant testified in substance as follows. I was standing by the side of the road waiting for Sugar (Arthur Samuels) to go to the doctor when a car pulled up by the side of me. This was about 5 or 10 minutes after I left Sugar's house. No one was in the car except Neely Trigg, who was driving the car. The car stopped right across the road from where I was standing. I fell on my knees and fired one time. I started on down the road toward the doctor. He was on the other side of the car from me. The driver's seat was towards me. He got out of the car on the other side. When he drove up he "had a stare fixed right on me". He was looking right at me. "He was staring me right in the eyes". He started around the car toward me and I dropped to my knees and fired the gun. I jumped up to run towards town and "he wheeled to come after me". When he got out of the car he went toward the front of the car. He didn't fall when I first fired nor did he say anything. When I started toward town and "he come toward the back of the car and I fired again, he said, 'you better make sure you are doing a good job.'"

On cross-examination the defendant further testified in substance as follows. While I was standing there Neely Trigg drove up. He was not on the same side of the street where I was. He did not pull his car over to my side of the street. His car was on the opposite side of the street from me. "Q. And you just hauled off and shot him? A. I did." The first shot was fired under the car and when he ran behind the car I fired again. I didn't have time to see if Neely Trigg had any weapon in his hand. He pulled up in his automobile and I started

shooting, while he was on the other side of the street. When he was asked "How far in the street did he get?" the defendant answered, "he got to the front wheel of the car." The street was wide enough for three automobiles to pass. I didn't see anything in his hand. I didn't see people on the front porch sitting right there. I knew I was shooting at him.

Testimony for the defendant tended to show that on the morning of the shooting between three and four o'clock, about eight hours before the shooting, the defendant came to the house of Mose and Rebecca Earl, asking to be taken into town. He was bleeding and Neely Trigg was at the front gate with a screw driver. The deceased was heard to threaten the defendant at that time. Tendencies of the evidence further showed that the defendant came to the house of one Arthur Samuels about one hour before the shooting when there was another difficulty between the deceased and the defendant. The defendant stayed about twenty minutes and then came back later. Arthur Samuels testified that it was about twenty minutes before the shooting when the defendant left his house on the first visit, but that it was about two minutes before the shooting when he left his house on the second visit. At this last time the defendant had his shot gun with him. Tendencies of the evidence for the defendant showed that the deceased was in the house next door to Arthur Samuels some ten minutes before the killing.

The defendant testified that he and the deceased had a difficulty about eight hours before the shooting and another difficulty about one hour before the shooting. The court excluded details in respect to the difficulty eight hours before the shooting such as for example with regard to defendant's alleged wounds, that "blood was pouring out (from defendant's head) like you'd pour water out of a bucket." See White v. State, 209 Ala. 546, 96 So. 709. The court further excluded details of the difficulty one hour before the shooting including evidence by the defendant that he was struck by the deceased with a piece of iron which looked like a jack.

To sum up the situation, the state showed a difficulty between the defendant and the deceased about eight hours before the killing. The defendant was allowed to prove threats in connection with that difficulty and that at that time Neely Trigg had a screw driver in his hand. The court however refused to allow the defendant to prove further details of the difficulty. The defendant was allowed to show a difficulty about one hour before the shooting but was not allowed to show the details of that difficulty, including the claim by the defendant that he was struck by the deceased at that time with a piece of iron which looked like a jack. It is seriously contended by the appellant that the court was in error in excluding the details of the difficulties to which we have referred.

Facts or declarations to be admissible under the principle of res gestae must be substantially contemporaneous with the main fact under consideration and so closely connected with it as to illustrate its character, Dudley v. State, 185 Ala. 27, 64 So. 309; Jackson v. State, 177 Ala. 12, 59 So. 171; Moss v. State, 190 Ala. 14, 67 So. 431. It is true, however, that where there is an unbroken chain of events beginning with a prior difficulty and leading up to the killing, the chain of events leading up to the killing need not be a part of the res gestae in the sense that these events became a part of the crime itself, but they are admissible since they lead up to and tend to explain the acts, animus or intent of the defendant at the time he committed the killing. Keith v. State, 253 Ala. 670, 46 So.2d 705; Smith v. State, 253 Ala. 220, 43 So.2d 821; Collins v. State, 138 Ala. 57, 34 So. 993, 994. In Sanders v. State, 242 Ala. 532, 7 So.2d 483, it was pointed out that there is a difference with reference to proof of prior difficulties where the state seeks to introduce such evidence and a situation where the defendant seeks to introduce such evidence. When such evidence is offered by the state showing the conduct of the defendant on the former occasion, it is to illustrate his acts at the time of the fatal difficulty but when it is offered by the defendant it must be subsequent to evidence tending to show

self-defense. Such evidence when offered by the defendant is not admissible if he was the aggressor in the difficulty which then and there resulted in the killing. It was further pointed out that when proof of the former difficulty is admissible while details of the difficulty may not be shown, the rule does not exclude proof that the deceased drew a gun on the defendant, as this is not proof of too much detail.

We have carefully considered the evidence with reference to the defendant's claim of self-defense. There was no proof of any weapon in the hands of deceased or that there was any weapon in the car of the deceased or in his immediate vicinity. There was no evidence of any hostile act or demonstration on the part of the deceased toward the defendant at the time of the shooting. The defendant was on the opposite side of the street from the deceased and under the evidence could have retreated without placing himself in any danger whatsoever. Turning toward the defendant, in view of the other undisputed facts was, without more, no evidence of a hostile act or demonstration which would justify the defendant in taking the life of the deceased. Jones v. State, 116 Ala. 468, 23 So. 135. The rule of self-defense is that persons may and must act on the reasonable appearance of things. While it is not required that where a person is menaced he must wait until a weapon is presented ready for deadly execution, yet the danger must be real or so manifestly apparent as to create a reasonable belief of presently impending peril to life or limb. In determining this question evidence most favorable to the defendant should be considered and if there is the slightest evidence tending to prove a hostile demonstration which can be reasonably interpreted as placing the accused, at the time of the killing, in apparent imminent danger to life or other grievous bodily harm then the matter of self-defense becomes a question of fact for the jury. Beasley v. State, 181 Ala. 28, 61 So. 259.

We do not consider that there is such evidence of self-defense in the case at bar as to justify proof by the defendant of prior difficulties. De Arman v. State, 71 Ala. 351; Beasley v. State, 181 Ala. 28, 61 So. 259; Hill v. State, 194 Ala. 11, 69 So. 941, 2 A.L.R. 509; Jackson v. State, 78 Ala. 471; Sullivan v. State, 102 Ala. 135, 15 So. 264; Fancher v. State, 217 Ala. 700, 117 So. 423.

Under the view of the case which we have here expressed, there was no error in the ruling of the court on the matter which has been considered, since there was no sufficient proof of self-defense. To this, of course, it can be added that much of the evidence excluded consisted of details of a former difficulty which cannot be shown. White v. State, 209 Ala. 546, 96 So. 709; Hendley v. State, 200 Ala. 546, 76 So. 904; Pressley v. State, 166 Ala. 17, 52 So. 337; Moss v. State, 190 Ala. 14, 67 So. 431; Wright v. State, 252 Ala. 46, 39 So.2d 395. But even as to proof that the deceased had a piece of iron which looked like a jack in his hand in the difficulty one hour before the killing, it is sufficient to say that, merely because the defendant received more than he was entitled to receive in being allowed to prove the difficulty, is no reason for putting the court in error for refusing to allow this detail of the difficulty.

There was no error in refusing to allow the defendant to prove the reputation of the deceased for violence and turbulence since there was no evidence to show that the defendant acted in self-defense. Wright v. State, supra; Delbridge v. State, 242 Ala. 677, 8 So.2d 160.

So far we have been dealing with the relevancy of proof offered by the defendant of prior difficulties and of the wounds suffered by him with respect to self-defense, but this evidence must now be considered from a different viewpoint. A defendant who claims to have acted in self-defense is not thereby precluded from asserting that the homicide was committed under circumstances reducing the degree of the crime. Reeves v. State, 186 Ala. 14, 65 So. 160. The defendant sought to show with reference to his wounds, in addition to what has been mentioned above, that he was "bleeding too bad", was "bleeding from a stab wound" and "jaw all swelled up at the time", that he was "struck with a piece of iron" by deceased one hour before

the killing and "staggered" in the house of Arthur Samuels and he sought to show that at Arthur Samuels' house, which was about 25 or 30 feet just across the highway from where Neely Trigg was killed, he was "laying down on the floor rolling" ten minutes before the shooting.

As we understand the record, the wounds received prior to being "struck with a piece of iron" were claimed to be the result of the difficulty eight hours before the shooting. The asserted fact remains, however, that ten minutes before the shooting Charlie Byrd was suffering pain from wounds received by him at the hands of the deceased. When he was arrested he was taken by the officer to the hospital.

It is not clear from the record as to just when Charlie Byrd got his gun or where he went to get the gun. The record only shows that he had the gun with him when he last came back to the house of Arthur Samuels about ten minutes before the shooting, The Alabama authorities hold that what amounts to "cooling time" is a question of law for the court. Sheppard v. State, 243 Ala. 498, 10 So.2d 822; Ragland v. State, 125 Ala. 12, 27 So. 983; Keiser v. Smith, 71 Ala. 481. The court is required to decide the matter of "cooling time" preliminary to the consideration by the jury of evidence relating to mitigation from heat of passion. Keiser v. Smith, supra. And how much time is necessary for cooling time must depend on the facts in the particular case. Bishop on Criminal Law (Ninth Ed.), Vol. 2, p. 543. In the case at bar there is a situation where there was a difficulty between the defendant and deceased eight hours before the shooting and a difficulty one hour before the shooting, but the proof sought to be introduced by the defendant would tend to indicate that as a result of these difficulties the defendant was suffering pain and anguish ten minutes before the shooting. Under these circumstances we think the judge should have heard this evidence on the initial inquiry as to whether there had been cooling time, and if cooling time had not expired, then the evidence should have gone to the jury on the issue vel non of whether the defendant was acting under the heat of passion at the time of the shooting by reason of continuing pain from injuries suffered by him. Smith v. State, 83 Ala. 26, 3 So. 551.

Some question is raised as to the court's oral charge but there was no exception to the oral charge. Under the automatic appeal act we are not required to review the oral charge of the court in the absence of exception thereto. Easley v. State, 246 Ala. 359, 20 So.2d 519.

For the error pointed out the judgment of the lower court must be reversed and the cause remanded.

Reversed and remanded.

All the Justices concur.

On Rehearing.

STAKELY, Justice.

Opinion corrected.

Application for rehearing overruled.

All the Justices concur.