# Daniel v. The State.

### Murder.

(Decided February 10, 1916.   Rehearing denied March 4, 1916.
71 South. 79.)

1. **Jury and Jurors; Venire; Service on Defendant.**—Where defendant was served five days before the day set for trial this was a substantial compliance with the requirements of § 32, Acts 1909, p. 317, in the light of the former statute.

2. **Same; Summoning.**—Under § 32, Acts 1909, p. 317, only those regular jurors who were drawn and summoned could be placed upon the venire to be

[Daniel v. The State.]

served on defendant, the court being without authority of law to include those appearing on the regular venire who were not summoned.

3. Same.—Where defendant was given his full quota of names under the requirements of Acts 1909, p. 317, he had no ground of complaint because of a premature return by the sheriff of the regular venire.

4. Same.—Where the writ of venire was on its face made returnable a certain day, a return of the venire on that day was not premature.

5. Homicide; Setting Down; Continuance.—Where the order of the court fixed a certain day for the trial of a capital felony, it was within the discretion of the trial court to pass the case until a succeeding day of the term, if the business of the court required it.

6. Appeal and Error; Harmless Error; Evidence.—Where the court properly sustained an objection to the question, error cannot be predicated on the fact that the ground urged was an improper ground.

7. Witnesses; Examination; Indefinite.—A question to a witness "Do you know what Mr. D was doing?" was so indefinite as to time and place as to authorize the court to sustain an objection.

8. Appeal and Error; Harmless Error; Evidence.—Where a witness subsequently testified fully as to the conduct of the parties immediately before and during the affray, any error in rulings on questions seeking to elicit such facts was rendered harmless.

9. Same.—Where a witness later testified that deceased struck the first blow and that defendant struck back, any error in sustaining an objection to the question "Did D. strike the first lick?" was harmless.

10. Witnesses; Impeachment; Character.—A witness may be impeached by competent evidence of bad character.

11. Homicide; Instructions; Presumption of Innocence.—An instruction that the presumption of innocence surrounds the defendant throughout the trial and shields him against every inference of guilt until destroyed by evidence so strong that the jury is convinced to a moral certainty beyond all reasonable doubt that defendant was not without guilt, was calculated to confuse because including the words "not without guilt," and its refusal was justified thereby.

12. Same.—A charge that no proof of guilt will satisfy the demands of the law if it does not convince the jury beyond reasonable doubt that defendant is necessarily guilty, was improper, since the use of the word "necessarily" in effect asserted that the evidence must exclude all doubt.

13. Same; Self Defense.—Threats of violence accompanied by an overt act may justify one assaulted in acting more promptly on the appearance of things, under the doctrine of apparent imminent peril.

14. Same.—A charge asserting that the law allows defendant who is without fault, when attacked by a person of known violent, dangerous character, to act more quickly in defense of his life or limb, was abstract, where the record contained no evidence that deceased was a man of such character.

15. Same.—A charge asserting that a person has a right to remain in his place of business, and be unmolested in the management of his business and need not retreat on the entry of a hostile person, and that the law does not require a defendant to retreat when attacked in his place of business, were

[Daniel v. The State.]

properly refused where there was a conflict in the evidence as to where the affray actually took place.

16. Same.—A charge asserting that a person has the right to remain in his place of business, and need not retreat therefrom when attacked, ignored the doctrine of freedom from fault, and was properly refused.

17. Charge of Court; Covered by Those Given.—The court will not be put in error for refusing charges substantially covered by written instructions given.

APPEAL from Jefferson Criminal Court.

Heard before Hon. WM. E. FORT.

W. E. Daniel was convicted of manslaughter in the first degree, and he appeals. Affirmed.

The killing is alleged to have been done by stabbing or cutting with a knife, and the person killed was one William Gunnaway. The tendency of the evidence sufficiently appears.

The following charges were refused to defendant: (22) The presumption of innocence surrounds defendant and attends him at every step in the case, and is a shield to him against every inference of guilt until it is destroyed by evidence so strong that you are convinced to a moral certainty, and beyond all reasonable doubt, that defendant is not without guilt.

(18) No amount of proof of guilt, however made, will satisfy the demands of the law, if it fails to convince the minds of all the jury beyond a reasonable doubt that defendant is necessarily guilty.

(5) I charge you that the law allows a defendant who is without fault in bringing on the difficulty, when attacked by a person of known violent, dangerous, bloodthirsty, and turbulent character, to act more quickly in defense of his life or limb than when attacked by a person of good character.

(1) A person has a right to remain in his place of business and to be unmolested in the management of his business in his own store, and there is no duty on him to retreat from it on the entering of a hostile person.

(3) I charge you that the law does not require a defendant to retreat when attacked in his own storehouse or place of business.

ALLEN, BELL & SADLER, for appellant. W. L. MARTIN, Attorney General, and H. G. DAVIS, Assistant Attorney General, for the State.

[Daniel v. The State.]

BROWN, J.—The order fixing the day for defendant's trial was made on January 30, 1915, and fixed the 8th day of February, the first day of the sixth week of the January term of the court, as the day for trial. On the same day, the court entered an order fixing the number of jurors constituting the venire for defendant's trial at 97, to be comprised of 37 jurors drawn and summoned for the sixth week of the term, and the 60 special jurors then drawn and ordered to be summoned. The return of the sheriff shows that a copy of the venire as thus constituted, together with a copy of the indictment, was served on the defendant in person on the 3d day of February, 1915, which was five days prior to the day set for the trial. Motion was made to quash the venire on the ground that it does not appear from the record of the court that the court "on the first day of the term, or as soon as practicable thereafter," made an order commanding the sheriff to summon not less than 50 nor more than 100 persons as jurors for the defendant's trial; that 100 persons' names have been drawn for the week, and only 97 of these names appear on the list served on the defendant; that the return of the sheriff on the regular venire for the week was premature and shows on its face a lack of diligence on the part of the sheriff in serving the regular jurors; that the record shows that the venire was not served "forthwith," as required by the statute.

(1) The purpose of the statute in requiring the court, at the earliest "practicable" day, to make an order for the summoning of the jury for defendant's trial, and requiring service of a list thereof on the defendant, is to afford the defendant ample time to inspect the list and inquire into the qualifications of persons constituting the venire for his trial. Previous to the enactment of the present jury law, the statute required service one entire day before the day set for the trial. In this case, the defendant was served five days before the day of his trial, affording defendant and his counsel ample time to inquire as to the qualifications of the jurors, and was therefore a substantial compliance with the statute.

(2-4) The statute provides—and the order of the court was in accord therewith—that the venire for the trial of a defendant charged with a capital felony shall be constituted of the jurors drawn and summoned for the week of the term in which the case is to be tried and those specially drawn by the court.

—Acts Special Session 1909, p. 318, § 32; *Harris v. State,* 172 Ala. 413, 55 South. 609. Therefore the accused had no interest in those persons whose names appeared on the regular venire and who were not summoned; they in no way affected the defendant's venire, and the court had no authority under the law to make them a constituent element thereof. So far as the regular jurors for the week were concerned, the ipse dixit of the statute fixed their status in relation to the defendant's trial. It was only those drawn and summoned that could be used. If it be conceded that the return of the sheriff on the regular venire was premature, it affords the defendant no ground to complain, as he was given his full quota of names required by the order of the court. Moreover, the venire, on its face, was made returnable on the 30th day of January, 1915, and the return was made on that date, and was not, in fact, premature. The return day of the venire was so fixed, no doubt, to meet the difficulty in fixing the number of names as constituting the special venire pointed out in *Harris v. State, supra.* The motion to quash the venire was properly overruled.—Acts 1909, supra, §§ 29-32.

(5) The order of the court fixed the 8th day of February, 1915, as the day for defendant's trial, and, if the business of the court required, it was within the discretion of the court to pass the case until a succeeding day of the term and proceed with the trial on that day.

(6-8) The state offered several witnesses whose testimony tended to show the details of the difficulty between defendant and deceased, which according to some of the witnesses, occurred between 6 and 7 o'clock in the evening, and, according to others, between 7 and 8, on the sidewalk in front of the defendant's place of business, and which tended to show an angry, wordy altercation with reference to a bill due from deceased to defendant; that the defendant threw up his left hand as though to strike deceased, and, when deceased threw up his hand to ward off the blow, the defendant cut him in the abdomen with a knife, inflicting a wound causing the death of the deceased. The defendant offered one Hurst Franklin, who testified that he saw the difficulty between the defendant and the deceased; that he was in the defendant's place of business at the time of the difficulty; that it occurred between 6 and 7 o'clock in the evening. He was then asked, by the defendant, "Do you know what was

the occasion of the cutting?" This question clearly called for a conclusion of the witness, and, while this objection was not urged against it, the objection that was made was sustained, and the court will not be put in error for sustaining it. The witness was also asked, "Do you know what Mr. Daniel was doing?" This question was indefinite in fixing the time, and may have referred to any time before or subsequent to the immediate difficulty, and the objection was properly sustained.—*Fleming v. State*, 150 Ala. 19, 43 South. 219. Furthermore, after these objections were sustained, the witness testified fully as to the conduct of the parties immediately before and during the affray.

(9, 10) The witness Smith was the defendant's witness, and the question, "Did Daniel strike the first lick?" was leading, and the objection of the solicitor was properly sustained. After this objection was sustained the witness testified that the deceased struck the first lick, and that defendant "hit back."

(11) No objection was made to the solicitor's question, "Would you believe him on oath?" to the witness Syx, offered in rebuttal by the state to impeach defendant's witness Smith. The question was not answered by the witness. The court did not err in allowing the state to show the general bad character of defendant's witness.—*Byers v. State*, 105 Ala. 31, 16 South. 716; *Rector v. State*, 11 Ala. App. 333, 66 South. 857.

(12-18) Charge 22, refused to the defendant, by the use of the words "not without guilt," was calculated to confuse, and its refusal was proper. By a close scrutiny of the charge, the conclusion is irresistible that it merely asserts the proposition that the presumption of innocence attends the defendant until his guilt is established by the evidence beyond a reasonable doubt; and this proposition of law was given to the jury in charge numbered 15, first appearing on page 17, and charge numbered 21, last appearing on page 18 of the record. Charge 18, by the use of the word "necessarily," in effect asserted that the evidence must exclude all doubt of guilt, and was well refused. Furthermore, the reasonable doubt doctrine sought to be embodied in this charge is fully covered by given charges 19, 21a, 23, 24, and 25. Charge 5 refused to the defendant was abstract. The record contains no evidence that the deceased was a person "of known violent, dangerous, bloodthirsty, and turbulent character." While it is true that threats of violence, accompanied by

[Bufford v. The State.]

an overt act, may justify one assaulted in acting more prompt-
ly "on the appearance of things," that is not the doctrine as-
serted by this charge. Such conditions and circumstances are
the foundation for the doctrine of "apparent imminent peril."
The charge was well refused. Charges 1 and 3 assume that the
fatal rencounter took place in the defendant's store, while there
was some evidence that it was on the sidewalk of the street in
front of the store, where both parties had a right to be.—*McGhee
v. State,* 178 Ala. 4, 59 South. 573. These charges also ignore
the doctrine of freedom from fault.—*Andrews v. State,* 159 Ala.
29, 48 South. 858; *Sanford v. State,* 2 Ala. App. 81, 57 South.
134; *Medlock v. State,* 114 Ala. 6, 22 South. 112; *Thomas v. State,*
13 Ala. App. 50, 69 South. 315.

There is no error in the record, and the judgment is affirmed.
Affirmed.