## COBB v. STATE. (8 Div. 975.)

(Court of Appeals of Alabama. June 12, 1923. Rehearing Denied July 10, 1923.)

**1. Homicide ⬅169(5)—Evidence as to presence of defendant chief of police on the street held immaterial.**

In a homicide case based on the shooting by defendant, who was a chief of police, of a person whom he was attempting to search for intoxicating liquor, evidence that it had been reported to defendant that deceased was at the place where the killing occurred selling whisky *held* inadmissible, if offered to justify the officers in going to the point on the streets where deceased was, the testimony being immaterial, as the presence of the officers at any point on the streets within their jurisdiction was at all times proper.

**2. Homicide ⬅169(5)—Evidence of reports to defendant chief of police that deceased was selling whisky held inadmissible.**

In the prosecution of a chief of police for shooting deceased while attempting to break away from him as he was about to be searched for liquor, evidence that it had been reported to defendant that deceased was at the place where the killing took place, selling whisky, was inadmissible to justify defendant in attempting to search deceased without a warrant, in view of Const. § 5, providing that the people shall be secure from unreasonable searches or seizures and that no search warrants shall issue without probable cause, supported by oath or affirmation.

**3. Intoxicating liquors ⬅249—Chief of police held to have no right to search person for liquors without warrant.**

A chief of police has no right, without a warrant, to search the person of one suspected of having intoxicating liquors, based on information that such person is selling whisky.

**4. Arrest ⬅71—When officer may make search without warrant stated.**

In addition to searching a person or premises under a search warrant, an officer may lawfully search a person in making a lawful arrest, either with a warrant duly issued, or for a felony committed by the person arrested, under Code, § 6269, or for a public offense committed or a breach of the peace threatened in his presence.

**5. Criminal law ⬅822(1) — Charge must be considered as a whole.**

A charge to the jury in a murder case must be considered in its entirety.

**6. Arrest ⬅68—Acts of police officer held not to constitute lawful arrest.**

Where defendant, who was chief of police, approached a person whom defendant was informed was selling whisky, and the police officer told him to throw up his hands and asked him what he had, there was no lawful arrest, for when an officer undertakes to arrest without a warrant he must inform the person of his authority and the cause of arrest, in view of Code 1907, § 6270.

**7. Homicide ⬡298—Charge as to right of defendant to make arrest held properly refused as not based on evidence.**

In a prosecution for the killing of a negro by a chief of police, who was attempting to search the negro for intoxicating liquors without a warrant, and who shot him as the negro was attempting to escape, a' charge that if deceased had in his possession a certain quantity of corn whisky defendant had a right to pursue him to make his arrest, and to use such force as was reasonably necessary therefor, and if in such pursuit defendant was reasonably impressed with impending danger to his life or of receiving grievous bodily harm, and only used such force under those circumstances, he should be acquitted, *held* properly refused as not based upon the evidence.

**8. Homicide ⬡298—Abstract charge not supported by proof held properly refused.**

In a prosecution for the killing of a negro by a chief of police, who was attempting to search the negro for intoxicating liquors without a warrant, and who shot the negro as he was attempting to escape, a charge that if the dead man had in his possession a certain quantity of corn whisky, defendant had a right to pursue him to make his arrest, and to use such force as was reasonably necessary therefor, and if in such pursuit defendant was reasonably impressed with impending danger to his life or of receiving grievous bodily harm, and only used such force under those circumstances he should be acquitted, *held* properly refused as abstract; it not appearing that defendant knew deceased had whisky in his possession.

**9. Homicide ⬡105—Instruction as to right to prevent the escape of one suspected of misdemeanor held properly refused.**

In a prosecution of a chief of police for shooting a negro, suspected of having intoxicating liquor in his possession, as he was running away when defendant was about to search him, an instruction that defendant had a right to pursue deceased in order to make his arrest and to use such force as was reasonably necessary therefor, *held* properly refused, since, even if deceased had committed a misdemeanor of which defendant knew, defendant would not have a right to shoot him in order to prevent his escape.

**10. Homicide ⬡298—Charge predicated on arrest of deceased and attempt to escape held properly refused as abstract.**

In the prosecution of a chief of police for shooting a negro suspected of having intoxicating liquors in his possession, as the negro broke away while defendant was attempting to search him, a charge that if deceased was under arrest and broke away and defendant used only such force as was necessary to recapture and arrest him, he should be acquitted, *held* properly refused as abstract; the evidence showing without conflict that no arrest was ever made.

**11. Criminal law ⬡814(1)—Charges not based on evidence properly refused.**

It is not error, in a criminal prosecution, to refuse to give requested charges, where such charges are not sustained by the evidence.

**12. Homicide ⬡298—Instruction as to self-defense properly refused as omitting predicate of freedom from fault on defendant's part.**

In the prosecution of a chief of police for shooting a negro, suspected of having intoxicating liquors in his possession, as he was attempting to escape while being searched, charges that if defendant at the time he shot deceased, as a reasonable man was impressed with the necessity to shoot to preserve his own life or to prevent him receiving bodily harm, and that if defendant reasonably believed that deceased made a demonstration as to draw a weapon, he should be acquitted, *held* properly refused as omitting the predicate of freedom from fault on the part of defendant.

**13. Homicide ⬡118(4) — Ordinary rules of self-defense not applicable to officer making an arrest.**

The ordinary rules of self-defense do not apply to an officer making an arrest, and he is not required to retreat, and he must use such force as is necessary to make the arrest, even if it becomes necessary to take life to protect himself from death or great bodily harm, provided he himself acts within the law in making the arrest.

Appeal from Circuit Court, Lauderdale County; Chas. P. Alman, Judge.

Stewart Cobb was convicted of manslaughter in the first degree, and he appeals. Affirmed.

Certiorari denied by Supreme Court in Ex parte Stewart Cobb, 210 Ala. 252, 97 So. 783.

The following charges were refused to the defendant:

"4. I charge you, gentlemen of the jury, that, if the dead man had in his possession a certain quantity of corn whisky, the defendant had a right to pursue the dead man in order to make his arrest, and in order to make such arrest the defendant had' a right to use such force as was reasonably necessary therefor, and if in such pursuit the defendant was reasonably impressed with impending danger to his life or of receiving grievous bodily harm, and only used such force under those circumstances, then you should find him not guilty."

"A. I charge you, gentlemen of the jury, that if you are reasonably satisfied from the evidence that the deceased was under arrest and broke away from Officer Ham and that the defendant sought to recapture and arrest the deceased and only used such force as was reasonably necessary to make said arrest, then you must acquit him."

"B. I charge you, gentlemen of the jury, if the defendant at the time he shot the deceased, under the circumstances with which he was surrounded, as a reasonable man was impressed with the necessity to shoot to preserve his own life or to prevent him receiving bodily harm and shot deceased under such circumstances, you must acquit him."

"I. I charge you, gentlemen of the jury, that, if the defendant reasonably believed that at the time he shot the deceased, the deceased made a demonstration as to draw a weapon,

and at that time the defendant, as a reasonable man, was impressed of impending death or serious bodily harm to his person, and so impressed at the time shot in self-defense, you must acquit the defendant."

Simpson & Simpson, of Florence, for appellant.

If deceased had liquor in his possession when defendant arrested him, he was violating the law in defendant's presence. Hayes v. Mitchell, 69 Ala. 452; Sanderson v. State, 168 Ala. 109, 53 South. 109; Tarwater v. State, 16 Ala. App. 140, 75 South. 816; Allred v. State, 205 Ala. 193, 87 South. 842. Charges 4, A, B, and I were correct, and should have been given. Ex parte Warsham, 203 Ala. 534, 84 South. 889; Birt v. State, 156 Ala. 29, 46 South. 858; Clements v. State, 50 Ala. 117. Defendant should have been permitted to show that he was informed the deceased was selling whisky and was a bad negro. Ex parte Warsham, supra; Gibson v. State, 193 Ala. 12, 69 South. 533.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

The portions of the court's oral charge excepted to were correct. Code 1907, §§ 6269, 7759. A charge not requiring the finding of the jury to be based on the evidence is defective. Edwards v. State, 205 Ala. 160, 87 South. 179. Charge A was properly refused. Williams v. State, 44 Ala. 41, Cunningham & Son v. Baker, etc., Co., 104 Ala. 160, 16 South. 68, 53 Am. St. Rep. 27. Charge I is defective, in omitting a definition of self-defense. Ex parte Anderson, 209 Ala. 489, 96 South. 636.

SAMFORD, J. The evidence for the state tended to prove that defendant, who was the chief of police in Florence, Ala., and one Ham, a policeman of the same town, were engaged in searching the person of the deceased, Fat Head by name; that while they were so engaged deceased broke away and ran, the officers ran after him, and while deceased was running, with no weapon in his hands, and without effort on the part of deceased to resist. except by flight, the officers began shooting at him with pistols, and one bullet from the pistol of defendant struck deceased in the middle of the back, going "straight in," from which wound death ensued; that this was in Lauderdale county.

The defendant offered to prove that the defendant, as chief of police, was notified that "Deceased was a dangerous negro, and at the place the killing occurred was selling whisky." The court refused to permit defendant to prove this, and proper exception was taken.

The testimony for defendant tended to show that, about 10 o'clock on a Sunday morning, defendant and another officer named Ham, with him, went to the place where deceased was within the municipal jurisdiction of the city; that Ham took hold of the deceased and asked him, "What he had on him?" The deceased knocked Ham's hand loose and ran. Ham ordered deceased to stop, and drew his pistol and fired (Ham says he fired into the ground). The deceased continuing to run, both Ham and defendant ran after deceased. Ham, after running a short distance, fell, and defendant continued to run and shoot at deceased until the deceased came close to the corner of a garage where deceased was, "looking back, trying to get his hand in his pocket," when defendant, who had already shot at deceased several times, shot deceased in the back and killed him. Near the corner of the garage where the deceased fell, was a Coca-Cola bottle containing whisky. It was also testified to by Ham that at the time he and defendant approached deceased: "I told him [deceased] to throw up his hands and asked him what he had." It was also shown that the officers acted without warrant. The defendant in his own behalf testified as follows:

"When we got down there Mr. Ham got out to arrest the negro; thereupon the negro knocked Mr. Ham's hands down and ran off, I got out of the car about that time, and Mr. Ham shot, and I shot after he did, and shot down to the ground, and Mr. Ham fell about that time. Just as the negro got to the corner of the garage he kinder slowed up and looked back, still trotting along, and ran his hand in his hip pocket; he was kinder looking over his shoulders at me. Just before this I told him to halt, two or three times, until the last shot I held my pistol down to the ground just before last shot. He run in his pocket and got out a Cocola bottle of whisky (I found afterward); when he ran his hand back in his pocket I shot. He brought the bottle out of his pocket just as he fell. It contained corn whisky. The bullet went on right side of back bone. I was there when they undressed him. He was running from me when I shot the first time, had slowed up when I shot last time. He was running away from me. I was not running toward him when the last shot was fired. I did not know he had a bottle in his hand when I fired last shot. Yes; he was running and had his hand in his hip pocket. He had his side sorter to me. He was getting behind the corner of garage when I shot him. No, sir; I did not shoot him because he would not stop, but because I thought he was going to shoot me; at the time we attempted to search him he made no effort to shoot only he resisted arrest. When we attempted to arrest him he knocked Mr. Ham's hands down and ran. He fell when I shot. I shot a .38; I had no search warrant for him. I had only heard he had violated the law; he committed no offense in my presence, except what was reported."

There was also evidence of the defendant's prior good character for peace and quiet.

There were rulings of the court on the evidence and charges to the jury, which will be adverted to later in this opinion.

[1, 2] That it had been reported to defendant that deceased was at the place where the killing took place selling whisky was inadmissible for several reasons. If it was offered to justify the officers in going to the point on the streets of Florence where deceased was, such testimony was immaterial, as their presence at any point on the streets, within their jurisdiction, was at all times proper. In this particular there is a difference between the case at bar and the cases of Ex parte Warsham, 203 Ala. 534, 84 South. 889, and Gibson's Case, 193 Ala. 12, 69 South. 533. In those two cases the evidence of information as to offenses being committed, was admitted to rebut evidence for the state tending to prove the presence of the officers at the places of the homicides, for other than official reasons, while in this case no such insistencies are or can be made. If this evidence was offered for the purpose of justifying the officers in attempting to search the deceased, it was illegal, irrelevant, and immaterial. Section 5 of the Constitution provides:

"That the people shall be secure in their persons, houses, papers and possessions from unreasonable seizure or searches, and that no warrants shall issue to search any place or to seize any person or thing without probable cause, supported by oath or affirmation."

[3, 4] The fact that deceased was a nameless and friendless negro none the less entitles him to the protection of the constitutional guaranties. Indeed these provisions were necessary to be written in the organic law, more for the protection of the poor and friendless, than for the rich and powerful. Even if defendant had been informed that deceased was "down there" selling whisky, defendant would have no right to search the person of deceased, based upon such information. A warrant to search the person or premises can only be obtained as is provided by the Constitution and laws of the state. There is only one other way by which an officer can search the person lawfully, and that is, when engaged in making a lawful arrest, either with a warrant duly issued, or for a felony committed by the person arrested, under section 6269 of the Code, or for a public offense committed or a breach of the peace threatened in his presence.

The following excerpts from the court's oral charge were excepted to, to wit:

First. "If the defendant had been told that this negro had liquor in his possession then it was his duty to apply to some officer for a search warrant to search the negro for whisky, and it would have made it the duty of the officer to investigate it by taking statement, or by demanding witnesses and if he swore there was probably cause for it, then to issue the search warrant to search the negro's house, or the negro's person for liquor, and then the chief of police would have a right to execute that search warrant."

Second. "Now, if Mr. Cobb had been assured that the dead negro had liquor in his possession or had been selling liquor, then he ought to have applied to the mayor of the city, or some officer authorized to issue warrants, for a warrant charging him with that offense and armed himself with that warrant before he attempted to arrest him."

Third. "If he had been told that he had liquor in his possession and did not know it except by hearsay then he would not be authorized to arrest the negro for having liquor in his possession without a warrant."

[5] The offense of selling or possessing liquor being a misdemeanor, the excerpts from the oral charge of the court, when taken and considered in connection with his entire charge, were in conformity to and in accord with section 5 of the Constitution and section 7756 et seq. of the Code of 1907.

[6] No lawful arrest was ever made or undertaken to be made in this case. When an officer undertakes to arrest without a warrant he must inform the person of his authority and the cause of arrest. Code 1907, § 6270. So far as defendant knew, deceased had committed no offense; neither of the officers saw him committing any; when they went up to deceased they did not arrest him. The evidence on this point being by the witness Ham: "I told him to throw up his hands and asked him what he had." The defendant then ran. At that time neither of the officers knew of any offense having been or that was being committed. They both began to shoot; certainly deceased thought the shots were fired at him. The last shot was surely shot at him as he fled from defendant, for the bullet entered the middle of deceased's back, and as he fell "he brought the bottle out of his pocket just as he fell." Hence defendant could not have been attempting to make an arrest for a crime committed in his presence, for defendant never knew deceased was committing a crime until after he had killed him. So that, stating the case in the most favorable light for defendant, defendant being informed that deceased was violating the prohibition law, by selling liquor, defendant and a policeman approach deceased for the purpose of searching his person; deceased makes no resistance except to flee; the defendant and the policeman attempt to intimidate deceased into stopping by firing their pistols; deceased continues to flee; while in full flight puts his hand in his pocket, whereupon defendant shoots to kill, and does kill, by shooting the fleeing man in the back; and on his trial defendant claims self-defense. Angling v. State, 137 Ala. 17, 34 South. 846. This question was submitted to the jury in charges fully protecting any rights which he may have as an officer or otherwise.

[7-9] Charge 4, as requested in writing by defendant, was not predicated upon the evidence and for that reason was properly refused. Edwards v. State, 205 Ala. 160, 87 South. 179. Moreover this charge is abstract,

as it appears from the evidence, without conflict, that the defendant did not know, at the time he killed deceased, that deceased had in his possession a Coca-Cola bottle full of whisky. Besides, even if deceased had committed a misdemeanor, of which defendant knew, defendant would have no right to shoot deceased in order to prevent his escape.

[10] Charge A was properly refused. In the first place the evidence, without conflict, shows that no arrest was ever made and hence the charge is abstract. Moreover, the shooting of a person who is fleeing from arrest for misdemeanor is never authorized, in order to make the arrest. Williams v. State, 44 Ala. 41; Cunningham v. Baker, 104 Ala. 160, 16 South. 68, 53 Am. St. Rep. 27.

[11-13] Charges B and I were properly refused, under the ruling in the Edwards Case, supra. In addition to that omission the charge omitted the predicate of a freedom from fault on the part of the defendant. It is true, when an officer goes to make an arrest, the ordinary rules of self-defense do not obtain, i. e., he is not required to retreat. In fact to do his duty he must advance, and he must use such force as is necessary to make the arrest, and, if in doing so it becomes necessary to take life in order to protect himself from death or great bodily harm, the law will protect him, but to be entitled to this protection he must himself have acted within the law in making the arrest. He cannot himself ignore the requirements of the law, be guilty of a trespass, and then invoke its protection. Tarwater v. State, 16 Ala. App. 140, 75 South. 816.

Charge E was covered by given charge F, and charge H was fully covered by the oral charge of the court.

On account of the unusual state of facts as shown by this record, it has not been an easy matter to make clear the rulings of the court as applicable to all cases involving the rights of officers making arrests in misdemeanor cases without warrant. In the case at bar, the rulings of the trial court, both as to charges and the admission of evidence, were based upon the legality of the action of the officers at the time of the attempted search of the person of deceased. To justify such a search the officers should have had a search warrant, based upon probable cause. This admittedly they did not have. Failing in this, there must have been a lawful arrest of deceased. The officers had no warrant and therefore such arrest must have been made for an offense committed in their presence, of which they had legal knowledge. It would be a dangerous doctrine to permit police officers, without warrant, to search the person and effects of citizens for evidence of misdemeanor, leaving only to those found innocent after search a right of civil action for a trespass to the person and the uncertainty and annoyance of litigation. The right of search and

seizure, even under warrant, was never recognized under the ancient common law, and as late as the time of Lord Coke (4 Inst. 176) the legality of search warrants, before indictment, was denied, and only came into existence during a later time in England almost unnoticed, as a "police weapon" to be used carefully lest it "wound the security or liberty of the citizen." Jones v. State (Ala. App.) 96 South. 721;[1] Buckley v. Beaulieu, 104 Me. 56, 71 Atl. 70, 22 L. R. A. (N. S.) 819. In Shields v. State, 104 Ala. 35–38, 16 South. 85, 86 (53 Am. St. Rep. 17), while justifying the admission of evidence obtained in an illegal search, the Chief Justice speaking for the court said:

"But he [the jailor] is without legal authority by force to search [a visitor to the jail] or examine them; or * * * to submit their persons to search or examination, even though he may suspect them of crime, or of criminal purposes. If by force, he makes search of their persons, or compels them to submit to it, he becomes a trespasser."

The defendant has had a fair trial, free from error, and whatever claims he may have to clemency based upon his zeal, for the protection of the public while occupying a hazardous office, lies with a power other than the courts.

We find no error in the record, and the judgment is affirmed.

Affirmed.