23 So.2d 19

## KIZZIAH v. STATE.

### 6 Div. 155.

Court of Appeals of Alabama.

Aug. 7, 1945.

Beddow, Ray & Jones, of Birmingham, and J. Monroe Ward and J. R. Bealle, both of Tuscaloosa, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

Notwithstanding the large number of witnesses who testified upon the trial of this case, as disclosed by the voluminous transcript, there was but slight conflict in the evidence on material matters.

The defendant was charged by indictment with the offense of assault with intent to murder. Specifically, that he, unlawfully and with malice aforethought, did assault Lewis Stephens with the intent to murder him, etc.

The trial resulted in the conviction of the defendant of the offense charged in the indictment. In accordance with this verdict of the jury, the court adjudged him

guilty of assault with intent to murder and sentenced him to imprisonment in the penitentiary for a period of twenty years. Judgment of conviction was duly pronounced and entered, from which this appeal was taken.

The testimony in this case without dispute or conflict disclosed that the two principals, the defendant Kizziah, and the injured party, Lewis Stephens, were on bad terms with each other, and had been for a long period of time. The testimony likewise discloses, that both of these men have a bad character. There had been former difficulties between them, and threats also.

The assault complained of in the indictment occurred about 9:00 at night in a pool room where a large number of persons were present, many of whom testified as witnesses upon the trial of this case, and the testimony, practically without dispute or conflict, tended to show that Lewis Stephens, the injured party, was, with others, leaning against an unoccupied pool table watching a game of pool being played on the table adjoining, at which time this appellant approached from the rear of the pool room and in close proximity shot Stephens twice. At the first shot Stephens straightened up and started for the door, and appellant shot him again, both bullets hit him, the first shot penetrated his left arm entering from the back, and the second shot hit him in the back, whereupon Stephens fell to the floor and several of the witnesses testified the defendant approached close to him and pointed his pistol at the prostrate man, whereupon Stephens said "you have done killed me Red, don't shoot me any more"; at which time witness Harris, the proprietor of the pool room, "hollered at Kizziah and told him not to shoot him any more, and defendant then went on out at the door."

Dr. Grover Shamblin, whose qualifications were admitted, testified that Lewis Stephens was brought to the Druid City Hospital the same night he was shot and that he examined him. He was asked, "Did he have any bullet wounds in his body and about his arm?" Ans. "Yes, there is one—the main one that caused the greatest portion of attention was the one that was in his back. * * * The bullet went in here (indicating and showing the bullet wound on defendant's back to the jury) the bullet ranged into the spinal column and cut the spinal cord and from the very beginning he was paralyzed."

He also testified: "He is permanently paralyzed from all volition, * * * and he can't stand on his legs, and will never be able to walk again." In answer to the question, "Was that wound he received in his back, Doctor, a wound that was calculated to produce death?" he answered: "Yes, the majority of them die paralyzed that high. * * * He will never be any better."

▮▮▮▮ The law is, where a person possessed of mental faculties intentionally kills or maims his fellow man, by shooting him with a pistol, there can be but one defense; that is, self-defense, and in order to sustain the plea of self-defense it must appear (1) that the perpetrator was free from fault in provoking or bringing on the difficulty; (2) is there reasonable room and ground for escape from injury? Is the threatened assault of such nature as, if perpetrated, it is likely to produce death or grievous bodily harm? In other words, the essential elements of self-defense are: First, that the defendant must be free from fault, must not say or do anything for the purpose of provoking a difficulty, nor be unmindful of the consequences in this respect of any wrongful word or act; second, there must be no convenient mode of escape by retreat or by declining the combat; and, lastly, there must be a present impending peril to life or danger of great bodily harm, either real or apparent, as to create the bona fide belief of an existing necessity.

▮▮▮ In the case at bar there is no evidence to sustain any of the essential elements of self-defense above enumerated. By the defendant's own testimony this clearly appears. As a witness in his own behalf he testified, among other things, referring to Lewis Stephens:

"He came in and I was standing there by Floyd's table where he was playing and I had my jacket on and he pulled at my jacket and says 'Come on back here and I will give you a drink' and I says, 'Lewis, I am going to ask you again to leave me alone; I don't want a thing you've got,' and they went to the back room and come back and they went around there on that side of the table (indicating) and I was standing up here at the cash register and walked over there where Floyd was. He was still playing pool where he had been playing and when I was sitting over there, he looked around at me and says to me 'I have got something in my pocket for you,

you red headed son-of-a-bitch,' and I says, 'If you've got something for me, bring it out and go to shooting.'

"Q. What did he do? A. He had his hands in his overcoat pocket like this (illustrating) and that is the way he did it (illustrating).

"Q. Did he turn toward you? A. He whirled around to me; he got up off the table; he was sitting like this and when he whirled like that (illustrating) I fired twice.

"Q. When he broke to whirl, you fired? A. Yes, sir, he was kindly coming toward me.

"Q. How many times did you shoot? A. I shot him twice."

Defendant on cross-examination was asked, "If he was facing you how did you shoot him in the back of his arm and in his back?" Ans. "I don't know how I did it. * * * I don't know how he got shot in the back."

As stated, there is no dispute or conflict in the evidence as to the wounds inflicted upon Stephens, by defendant, being in the back of his arm, and in his back. This undisputed fact refutes any question of the necessity to kill, real or apparent, and under such condition the defendant cannot set up self-defense. Angling v. State, 137 Ala. 17, 34 So. 846; Moon v. State, 21 Ala. App. 111, 105 So. 427. In said case the court said:

"The undisputed evidence in this case shows that the death wound upon Yancy Hunter, the deceased, named in this indictment, inflicted by this defendant, was almost in the center of his back, just above the waist line. This physical fact, being without conflict, of itself would preclude the right of the defendant to the general affirmative charge."

In Glass v. State, 29 Ala.App. 468, 198 So. 70, 71, the court said:

" 'Where, on a trial under an indictment for murder the evidence shows that the defendant shot the deceased in the back while the latter was in the act of running from him, there is shown to exist no necessity real or apparent, which justified the killing, and therefore the defendant in such a case can not set up self defense.' See also Cobb v. State, 19 Ala.App. 345, 346, 348, 97 So. 779; Mangino v. Todd et al., 19 Ala.App. 486, 491, 98 So. 323; Moon v. State, 21 Ala.App. 111, 112, 105 So. 427; Vaughan v. State, 21 Ala.App. 204, 107 So. 797; Wright v. State, 22 Ala.App. 376, 115 So. 852; Riddle v. State, 25 Ala.App. 142, 142 So. 680; Williams v. State, 26 Ala. App. 529, 163 So. 668; Barnum v. State, 28 Ala.App. 590, 190 So. 310."

In Barnum v. State, 28 Ala.App. 590, 190 So. 310, 311, said the court:

"The killing of Alvis by defendant being admitted, the only issue involved upon this trial, was whether he was justified in so doing under the law of self-defense, and in this case the death wounds being, as stated in the back of deceased, would, of necessity, tend to show that, at the time the fatal shots were fired, the defendant could not have been in imminent danger of suffering death or grievous bodily harm at the hands of deceased. * * * The law is, unless the defendant was in such danger, real or apparent, his right of self-defense must fall, and the questions of retreat or freedom from fault need not be entered into."

Pending the trial numerous objections were interposed upon the admission and rejection of the evidence, and exceptions reserved to the adverse rulings of the court. These questions are insisted upon here to effect a reversal of the judgment of conviction from which this appeal was taken. We have examined and considered each and every one of these exceptions and find no ruling of the court in this connection calculated to erroneously affect the substantial rights of the accused. To the contrary, it affirmatively appears that the learned trial court accorded to the defendant every right to which, under the law, he was entitled. It would be difficult to conceive of how a fairer trial could be given to anyone accused of a violation of the law. We see no necessity of discussing the insistences in detail and refrain from so doing. Further, for the reason the actual location of the wounds upon the body of the injured party was not in question. It affirmatively appeared without conflict in the evidence that said wounds were in his back. This being true, such technical errors, if any, in the rulings of the court in the manner of permitting such undisputed fact to be proven will not cause a reversal of this case. The Statute, Title 15, Section 389, Code of Alabama, expressly provides that a judgment of conviction must not be reversed because of error, when the court is satisfied that no injury resulted therefrom to the defendant.

It affirmatively appears from the evidence that at the time defendant shot Lewis, he, Lewis, was totally unarmed.

We are clear to the conclusion that under all the evidence in this case the jury was correct in its finding, and in determining, as it manifestly did, that the serious shooting of Stephens by the defendant was the result of revenge or malice and not in any manner in order to save himself from death or grievous bodily harm.

It is also contended that the punishment fixed by the court is wrong and unjust as the facts of this case do not justify this maximum sentence on this defendant. The question of the proper punishment within the statutory limitations was a matter for the court. In the instant case we are of the opinion the court's action should not be disturbed. The motion for a new trial was properly overruled.

No error of a reversible nature appearing in any ruling of the court, the judgment of conviction in this case will stand affirmed.

Affirmed.